**Evelyn P. CARO, Appellant**

v.

**James J. GLAH, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued June 9, 2004.
Filed Dec. 29, 2004.
Reargument Denied March 1, 2005.

Beth A. Lazzara, Pittsburgh, for appellant.

Louis C. Long, Pittsburgh, for appellee.

Before: FORD ELLIOTT, TODD, and PANELLA, JJ.

TODD, J.:

¶ 1 Evelyn P. Caro appeals the November 24, 2003 order of the Bedford County Court of Common Pleas granting summary judgment in favor of Appellee, James J. Glah, M.D. For the reasons that follow, we reverse the order of the trial court and remand the matter for trial.

¶ 2 The relevant facts of the instant case are as follows: On May 6, 1998, Appellee performed a complete arthroplasty on Appellant's left knee. Following the surgery, Appellant continued to experience pain and discomfort in her left knee. When Appellant reported this pain to Appellee, he assured her that the pain would subside as the tissues healed and with continued efforts to rehabilitate the knee. On July 14, 1999, her knee pain having failed to subside, Appellant sought a second opinion from Dr. Charles J. Harvey. Dr. Harvey advised Appellant that her knee appeared to be appropriately placed, and encouraged Appellant to continue her treatment with Appellee. On September 14, 1999, Appellant was examined by a third doctor, Dr. James Ridella. Dr. Ridella informed Ap-

pellant that there were physical problems with her knee, including a fractured patella, which he attributed to the surgery performed by Appellee. Dr. Ridella advised Appellant that revision surgery was necessary to correct the problem.

¶ 3 On September 13, 2001, Appellant filed a writ of summons in the Cambria County Court of Common Pleas. Appellant filed a complaint against Appellee on February 7, 2002, to which Appellee filed preliminary objections wherein he alleged that Appellant's claims were barred as a result of invalid service. Appellee also sought to transfer the case to Bedford County. Appellant agreed to the transfer, and on August 28, 2002, the trial court dismissed Appellee's preliminary objections, finding that service was proper.

¶ 4 On September 16, 2002, Appellee filed an answer and new matter wherein he asserted that Appellant's claims were barred by the applicable statute of limitations. In her reply, Appellant argued that because she did not discover her injuries until her examination by Dr. Ridella on September 14, 1999, her action was timely filed within the two-year statute of limitations applicable to medical malpractice actions. Following discovery, Appellee filed a motion for summary judgment on the grounds that Appellant's action was untimely, and, following argument, the trial court granted Appellee's motion on November 24, 2003. This appeal followed, wherein Appellant presents the following issues:

1. Whether [Appellant's] claims were timely filed under the applicable limitations period as extended by application of the Discovery Rule?

2. Whether [Appellant] is required to exercise reasonable diligence in filing a claim after she discovers the fact and cause of her injury without

regard to the applicable limitations period?

3. Whether the Discovery Rule should be applied to this case to exclude the period of time during which [Appellant] was unaware of the fact of her injuries and the cause thereof?

(Appellant's Brief at 3.)

¶ 5 Preliminarily, we note that our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 6 With respect to the issue of whether a lawsuit has been timely filed, our Supreme Court has explained:

[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations; even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the

party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

The "discovery rule" is such an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause.

*Pocono Int. Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84–85, 468 A.2d 468, 471 (1983) (citations omitted) (emphasis original).

¶ 7 In addition, if,

"through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate form his right of inquiry," the defendant is estopped from invoking the bar of the statute of limitations. Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

*Burton–Lister v. Siegel, Sivitz and Lebed Assoc.,* 798 A.2d 231, 237 (Pa.Super.2002) (citations omitted). Furthermore, "the fact that a plaintiff is not aware that the defendant's conduct is wrongful, injurious or legally actionable is irrelevant to the discovery rule analysis." *Id.* (citation omitted). Indeed, "[o]nce the plaintiff *becomes aware of the injury and who occasioned it,* she is under a duty to investigate the matter and commence a cause of action." *Id.* (citation omitted) (emphasis added).

¶ 8 We recognize that

[the Pennsylvania Supreme] Court has long held that there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry

and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence. Although reasonable diligence is an objective rather than a subjective standard, "[I]t is sufficiently flexible ... to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." A plaintiff's actions must be evaluated, therefore, to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." In other words, a party is not under an absolute duty to discover the cause of his injury. Instead he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

*Id.* (citation omitted).

¶ 9 In the instant case, we conclude that Appellant did not become aware of her injury and who caused it until she consulted with Dr. Ridella on September 14, 1999. Moreover, Appellant diligently sought a second, and then a third medical opinion to determine the cause of her knee pain. Indeed, as the trial court acknowledged, it was Dr. Ridella who informed Appellant that she had an injury and that the injury was caused by the surgery performed by Appellee. The trial court further conceded that it did "not feel the time it took [Appellant] to discover the injury was unreasonable by any means; if anything, Plaintiff actively pursued a diagnosis for the injury she experienced." (Trial Court Opinion, 11/24/03, at 5.)

¶ 10 The trial court further noted, however, that following her consultation with

Dr. Ridella on September 14, 1999, Appellant had seven months in which to pursue legal action and still fall within the two-year statute of limitations applicable to medical malpractice claims. The trial court determined, therefore, that "[Appellant's] pursuit of legal remedy was not pursued in the same timely fashion and ... her cause of action is now time-barred." (*Id.*) We find that the trial court committed an error of law in this regard.

¶ 11 In its opinion, the trial court notes that our Supreme Court has addressed, but remained evenly divided, on the issue of whether the discovery rule applies where a plaintiff discovers an injury within the original statute of limitations, but does not file suit until after the expiration thereof. Indeed, in *Baumgart v. Keene Bldg. Prod. Corp.*, 542 Pa. 194, 666 A.2d 238 (1995), three justices of our Supreme Court concluded that the discovery rule did not apply to toll the statute of limitations on the plaintiff's wrongful death and survival actions because the plaintiff knew of her deceased husband's injury and its cause within the applicable statutory period. In so concluding, the justices reasoned in their Opinion in Support of Affirmance of the trial court's grant of summary judgment that

> [t]he **discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period**, the limitations period does not begin to run until the discovery of the **injury is reasonably possible**. Conversely, if the existence of the injury and cause thereof are reasonably ascertainable within the two-year statutory period, the discovery rule does not apply and no tolling occurs.

*Id.* at 199, 666 A.2d at 240 (citation omitted) (emphasis original).

¶ 12 In an Opinion in Support of Reversal of the trial court's grant of summary judgment in *Baumgart*, however, an equal number of justices noted that the approach espoused in the Opinion in Support of Affirmance creates several practical problems:

> Theoretically, a party could discover the cause of his illness a day or week before the expiration of the limitations period. Under the construct advanced by the Opinion in Support of Affirmance, this party could have filed suit within the limitations period and, therefore, is not entitled to the benefit of the discovery rule, although only having a day or a week to bring his cause of action. This somewhat exaggerated, although certainly plausible, hypothetical points to the weakness under this approach; it deprives the affected party of the full limitations period in which to bring his suit. Instead, a party may be left with a dramatically curtailed limitations period. Another hypothetical further demonstrates the weakness of the position espoused by the Opinion in Support of Affirmance argument. Theoretically, a party could discover the cause of his disease a week after the expiration of the limitations period. Apparently, the Opinion in Support of Affirmance would apply the discovery rule and accord this party the full benefit of the two year limitations period because he could not have filed suit within the statute. What a difference a week or two makes under such an argument! I simply do not believe that the limitations period should be based on a retrospective determination of whether a party could have filed suit before the expiration of the limitations period.

*Id.* at 209–210, 666 A.2d at 245. (Opinion by Justice Montemuro).

¶ 13 Five years after *Baumgart,* our Supreme Court remained divided on the issue of whether the discovery rule applied in cases where an injury and its cause were or reasonably could have been discovered within the original two-year statute of limitations. In *Murphy v. Saavedra,* 560 Pa. 423, 746 A.2d 92 (2000), three justices again concluded that the discovery rule did not apply where the plaintiff knew or reasonably should have known within the original statute of limitations period of her injury and the operative cause thereof, but failed to file suit until after the statute of limitations had run, stating that "it is the duty of a party asserting a cause of action to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Id.* at 426, 746 A.2d at 94 (citations omitted).

¶ 14 As in *Baumgart,* however, an equal number of justices joined in an Opinion in Support of Reversal, noting, *inter alia,* that the purpose of the discovery rule "is to exclude 'the period of time during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury.'" *Id.* at 434, 746 A.2d at 99 (emphasis original). The justices further opined:

> The Opinion in Support of Affirmance ignores the fact that the purpose of the discovery rule is equitable, in that it attempts to treat all patients similarly. *Dalrymple* [*v. Brown,* 549 Pa. 217, 701 A.2d 164, 167 (1997)]. The Opinion in Support of Affirmance apparently recognizes the discrepancy that may arise by treating a plaintiff who became reasonably aware of her injury within the statute of limitations differently from one who became aware of her injury follow-

ing the applicable limitations period, but suggests that such a result is inevitable. Opinion in Support of Affirmance, p. 95, fn. 4. Under the Opinion in Support of Affirmance, a plaintiff who is reasonably diligent, but fails to discover her injury until the day before the statute of limitations is to run on the action, must file the action within the applicable statute of limitations, or 24 hours. However, the plaintiff who is reasonably diligent and discovers her injury the day after the statute of limitations has run on the action, would be entitled to another two years to file the action, since she discovered her injury outside the applicable statute of limitations. Although the Opinion in Support of Affirmance remarks that such a result may seem unfair, we believe that such a result is not merely unfair, but absurd and contrary to the purpose of the discovery rule.

*Id.* at 435 n. 2, 746 A.2d at 99 n. 2. (Opinion by Chief Justice (then Justice) Cappy).

¶ 15 We note that this Court subsequently has declined to apply the analysis proposed in the opinions in support of affirmance in *Baumgart* and *Murphy.* For example, in *Ward v. Rice,* 828 A.2d 1118 (Pa.Super.2003), *appeal granted,* 575 Pa. 704, 837 A.2d 1178, this Court reversed the trial court's grant of summary judgment in favor of the appellee *despite the fact that the appellant became aware of her injury and its cause within the original two-year statute of limitations, but failed to file suit until approximately six months after the expiration thereof.*

¶ 16 The appellant in *Ward* had dental surgery on March 28, 1995, and immediately experienced numbness and tingling, which she communicated to her dentist, the appellee. On several occasions, the appellee assured the appellant that her

condition would get better. On July 5, 1995, the appellant asked the appellee to refer her to another dentist for a second opinion, and on October 11, 1995, the appellant was, in fact, seen by another dentist, who also advised the appellant that her condition was not permanent. By March 4, 1996, however, the appellant's condition had worsened, and the appellee referred her to an oral surgeon, who advised her that there was no guarantee that her pain and numbness would improve with additional surgery. Nevertheless, Appellant remained under Appellee's care until March 19, 1997. On September 26, 1997, the appellant commenced a lawsuit against appellee. Upon motion by the appellee, the trial court granted summary judgment on the grounds that the appellant's claims were barred by the statute of limitations and that neither the discovery rule nor the doctrine of fraud or concealment served to toll the statute of limitations.

¶ 17 On appeal, this Court concluded that the assurances given by the appellee that her condition would improve "lulled Appellant into a false sense of security, which conduct constituted 'concealment,' and, thus, tolled the statute of limitations." *Id.* at 1125 (footnote omitted). This Court further held that because the appellant had two years from the date she first obtained a second opinion on October 11, 1995, the appellant's filing of a writ of summons on September 26, 1997 was timely. In so holding, this Court implicitly rejected the analysis proposed in the opinions in support of affirmance in *Baumgart* and *Murphy*, in that if we had adopted such analysis we would have held that the statute of limitations on Ward's claims expired on March 28, 1997 because the appellant sought a second opinion within two years of her dental surgery.

¶ 18 Moreover, this Court finds persuasive the reasoning and analysis of the opinions in support of reversal in both *Baumgart* and *Murphy*, and we conclude that the adoption of the analysis therein comports with public policy and the original purpose of the discovery rule. Accordingly, we hold that in the instant case, the discovery rule applies to toll the statute of limitations on Appellant's claims.

■ ¶ 19 Appellee argues that in the event this Court determines that the discovery rule applies, Appellant's action still is time-barred in that the statute of limitations began to run at least as early as July 14, 1999, when Appellant consulted with Dr. Harvey for a second opinion, because such consultation was evidence of Appellant's loss of confidence in Appellee's ability to treat her. Appellee cites *Ward* for the proposition that "when the injured person loses confidence in her doctor, the statute of limitations begins to run anew." *Id.* However, in *Ward*, the appellant was not subject to the requirements of Rule 1042.3(a) of the Pennsylvania Rules of Civil Procedure, which was adopted on January 27, 2003 and took effect immediately. Rule 1042.3(a) provides that in a medical malpractice action, the plaintiff must file with his complaint, or within sixty days thereafter, a certificate of merit signed by the plaintiff or his attorney that:

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations

that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.Civ.P. 1042.3(a). In the instant case, Appellant felt that something was wrong with her knee and sought a second opinion from Dr. Harvey. Although Appellee contends that the statute of limitations should begin to run upon this manifestation of Appellant's alleged loss of confidence in Appellee, as noted above, Dr. Harvey failed to diagnose an injury and indeed advised Appellant to continue her treatment with Appellee. Thus, at this point, Appellant would have been unable to comply with the requirements of Rule 1042.3(a). It was not until Appellant consulted with Dr. Ridella that she learned that she had suffered a fractured patella as a result of the surgery performed by Appellee, and, therefore, it was not until that time that she was able to comply with Rule 1042.3(a). In light of the new requirements of Rule 1042.3, we now hold that evidence that an injured party appeared to have lost confidence in his or her physician, without more, is insufficient to trigger the running of statute of limitations where a plaintiff has diligently sought to discover the cause of his or her injury.

¶ 20 Indeed, we find that such an approach is consistent with our Supreme Court's explanation that the discovery rule "arises from the *inability* of the injured, *despite the exercise of due diligence*, to know of the injury or its cause." *Pocono International Raceway, Inc.,* 503 Pa. at 85, 468 A.2d at 471 (italics original) (emphasis added). Although Appellant's consultation with Dr. Harvey may suggest that Appellant had lost confidence in Appellee, she did not learn of her *injury or its cause*

until she consulted with Dr. Ridella on September 14, 1999.

¶ 21 Moreover, there are clear public policy reasons for refusing to hold that the statute of limitations begins to run at the first evidence of a patient's loss of confidence in his or her doctor, for example, by seeking a second opinion, in that "patients will be compelled to file suit, before they know whether their pain is linked to a physician's action or is a normal side effect of the treatment or procedure. This compulsion to file suit harms all parties to the action, including physicians and hospitals, as well as their patients." *Murphy,* 560 Pa. at 433, 746 A.2d at 98 (opinion in support of reversal).

¶ 22 For all of the reasons set forth above, we conclude that the statute of limitations did not begin to run until Appellant's visit with Dr. Ridella on September 14, 1999, and that she had until September 14, 2001 to institute legal proceedings against Appellee. Accordingly, we hold that the trial court committed an error of law in granting summary judgment to Appellee on the grounds that Appellant's action, commenced on September 13, 2001, was not timely filed. As a result, we reverse the order of the trial court and remand the case for further proceedings.

¶ 23 Order **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**