J-A05043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MONROE-PIKE LAND, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SYLVIA E. HINTON, TRUSTEE OF THE GLENN C. YOUNKIN REVOCABLE LIVING TRUST AGREEMENT DATED OCTOBER 31, 2000, AND THE GLENN C. YOUNKIN REVOCABLE LIVING TRUST AGREEMENT DATED OCTOBER 31, 2000, | |
| Appellees | No. 2283 EDA 2014 |

Appeal from the Order June 27, 2014
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 4777 Civil 2011

BEFORE: GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 17, 2015**

Appellant, Monroe-Pike Land, LLC ("MPL"), appeals from the order granting summary judgment in favor of Appellees, Sylvia E. Hinton ("Ms. Hinton"), as trustee of the Glenn C. Younkin Revocable Living Trust Agreement Dated October 31, 2000, and the Glenn C. Younkin Revocable Living Trust Agreement Dated October 31, 2000 ("the Trust"). We affirm.

MPL, by its manager, Robert Brown, signed an agreement of sale ("Agreement") on August 4, 2005,[1] to purchase two parcels totaling 82.3 acres of unimproved land in Smithfield Township, Monroe County, from the Trust for $915,000.00. The Agreement required MPL to post a "Feasibility Deposit" of $25,000.00 upon signing. Agreement, 8/4/05, at ¶ 2. MPL paid the $25,000 to F. Andrew Wolf, Esquire, who was counsel for the Trust, as escrow agent. The Agreement provided MPL with two performance periods: a "Feasibility Period" and an "Approval Period." *Id*. at ¶¶ 5, 11a.

The Feasibility Period gave MPL 180 days to conduct tests and do what was necessary for it to decide if it was feasible to develop the property. Agreement, 8/4/05, at ¶ 10a. If MPL's "Feasiblity Investigation" revealed it could not develop the property as envisioned, the Agreement required it to notify the Trust of its desire to terminate before the Feasibility Period ended. *Id*. If MPL failed to give timely notice of termination, it forfeited all deposits to the Trust. *Id*. The parties could mutually agree by written addendum to extend this period, which they did four times. *Id*. at ¶ 11b. According to the trial court, in the July 2007 Fourth Addendum, the parties agreed this period had ended. Trial Court Opinion, 6/27/14, at 2.

---

[1] MPL, Ms. Hinton, and the complaint assert the Agreement was entered into on June 27, 2005. The trial court lists the execution date as August 4, 2005. Trial Court Opinion, 6/27/14, at 1. We note that Ms. Hinton signed the Agreement on July 25, 2005, and Robert Brown signed it for MPL on August 4, 2005.

Within five days following the expiration of the Feasibility Period, the Agreement required MPL to deliver a check for $50,000.00 ("Second Deposit"), provided MPL had not exercised its right to terminate. Agreement, 8/4/05, at ¶ 2b. The trial court noted that because MPL had made three deposits of $10,000 in consideration for the three extensions of the Feasibility Period, the parties agreed in the Fourth Addendum that MPL would deliver $20,000, which together with the $30,000 in additional Feasibility Period deposits, would constitute the Second Deposit provided for in the Agreement. Trial Court Opinion, 6/27/14, at 2.

The Approval Period gave MPL time to obtain necessary governmental approvals for its planned project. Agreement, 8/4/05, at ¶ 11. Under Paragraph 11, MPL had nine months from the execution date to obtain "final subdivision and/or land development approval from Smithfield Township." *Id*. at ¶ 11(a). In the event that MPL was unable to obtain approval within the nine-month period, it had three options: (1) terminate the Agreement; (2) waive the approvals and proceed to closing; or (3) extend the closing date six months by providing an additional $50,000 deposit. *Id*. at ¶ 11(b). If MPL chose the third option and had still not received approval, it again had the option to terminate the Agreement, waive the approvals and proceed to closing, or extend the closing date, this time on a month-to-month basis for up to twelve months at the cost of $5,000.00 per month. *Id*. at ¶ 11(c). If MPL terminated the Agreement under any of the paragraph eleven

provisions, the deposit would be retained by Appellees. *Id*.; Trial Court Opinion, 6/27/14, at 3.

The relevant portions of the Agreement, referenced above, are as follows:

2. **Purchase Price**. The price to be paid by Buyer for the Land shall be NINE HUNDRED FIFTEEN THOUSAND ($915,000.00) DOLLARS ("Purchase Price"). The Purchase Price is allocated between the parcels as follows: Parcel 1 = $840,000; Parcel 2 = $75,000. The Purchase Price shall be paid to the Seller by the Buyer in the following manner:

a. TWENTY FIVE THOUSAND DOLLARS ($25,000.00) delivered by Buyer to Seller's Attorney, as escrow agent, ("Escrow Agent") by Buyer's plain check and to be held by Escrow Agent under the terms hereof ("Feasibility Deposit"). The Feasibility Deposit shall be held by Escrow Agent until the expiration of the Feasibility Period under Paragraph 10 of this Agreement. If Buyer does not exercise its right to terminate this Agreement under Paragraph 10(a), the Feasibility Deposit shall be released by Escrow Agent to Seller within five (5) days following the expiration of the Feasibility Period. If Buyer exercises its right to terminate this Agreement under Paragraph 10 hereof, the Escrow Agent shall, depending on the option chosen by Buyer under Paragraph 10.a., either return the Feasibility Deposit in full to Buyer or release it to Seller within five (5) days after notice of termination.

b. The additional sum of FIFTY THOUSAND DOLLARS ($50,000.00) ("Second Deposit") shall be delivered by Buyer to Seller by Buyer's plain check within five (5) days following the expiration of the Feasibility Period under Paragraph 10 of this Agreement, if Buyer has not exercised its right to terminate this Agreement under the said Paragraph 10.

\* \* \*

10. **Conditions of Closing**. Buyer's obligation to proceed to Closing under the terms of this Agreement is expressly conditioned upon the following:

a. **Feasibility Period**. Buyer shall have One Hundred Eighty (180) days from the Execution Date ("Feasibility Period") to perform any and all tests, studies, examinations and other investigations of any nature whatsoever of the Land, the conditions of the Land, and the feasibility of Buyer's plans to develop the Land, in Buyer's sole discretion, including but not limited to preparation and submission of sketch plans, surveys, soils studies, environmental audits, surveys and analyses, determination of availability and feasibility of water service and on-site septic and/or sewer systems ("Feasibility Investigation"). If Buyer determines, for any reason whatsoever in Buyer's sole discretion, that any condition of the Land is not acceptable or satisfactory to Buyer, or that Buyer's plans for the Land are not feasible, Buyer may terminate this Agreement by providing Seller with written notice of termination. Said notice of termination must be given on or before the expiration of the Feasibility Period, and notice is deemed to have been given as of the date of mailing. If Buyer does not give notice of termination as required, the Buyer shall have waived its right to terminate the Agreement under this Paragraph 10(a) and the Agreement shall remain in full force and effect, and the Feasibility Deposit shall be released by Escrow Agent to Seller within five (5) days following expiration of the Feasibility Period.

* * *

11. **Approvals to be Obtained by Buyer**.

a. Buyer intends to obtain preliminary and final subdivision and/or land development approval from Smithfield Township (the "Township") for the subdivision and land development of the Land for various residential and commercial uses as Buyer desires, and Buyer intends to obtain any and all other approvals required or deemed desirable by Buyer in order to develop the Land for such uses in accordance with local, state and federal ordinances, laws and regulations (together, the subdivision and/or land development approvals and all other approvals are referred to herein as the "Approvals"). Subject to the requirements hereafter set forth for the payment of additional deposits to Seller and the right to extend the Closing Date if such approvals have not been obtained, Buyer shall have Nine (9) Months from the Execution Date (the "Approval Period") to obtain the Approvals. Buyer agrees to proceed with all due diligence to obtain the Approvals.

- 5 -

b.    In the event that Buyer has not obtained the Approvals within the Approval Period, Buyer may, in its sole discretion and at its sole option, (i) elect to terminate the Agreement by written notice thereof to Seller at least fifteen (15) days prior to the expiration of the Approval Period, or (ii) to waive the Approvals contingency and proceed with Closing, or (iii) to extend the Closing Date for an additional Six (6) months (to Fifteen (15) months from the Execution Date) by paying an additional deposit in the amount of $50,000 to Seller by Buyer's plain check (the "Extension Deposit") sent not later than the end of the Approval Period.

c.    In the further event that Buyer has not obtained the Approvals within the Approval Period, as extended, Buyer may, in its sole discretion and at its sole option, (i) elect to terminate the Agreement by written notice thereof to Seller at least fifteen (15) days prior to the expiration of the Approval Period as extended, or (ii) to waive the Approvals contingency and proceed with Closing, or (iii) to extend the Closing Date on a month to month basis for up to twelve (12) additional months (to Twenty-seven (27) months total from the Execution Date) by the payment of FIVE THOUSAND ($5,000.00) DOLLARS per month, each payable within SEVEN (7) DAYS of the beginning of each of such months which beginning shall be deemed to be the monthly anniversary date of the Execution Date.

In the event Buyer elects to terminate the Agreement, the Deposit shall be retained by Seller and this Agreement shall be null and void, and the parties hereto shall have no further rights, duties, obligations or liabilities hereunder.

Agreement, 8/4/05, at ¶¶ 2a, b; 10a; 11a, b, c.

On April 2, 2008, MPL's counsel, Charles Vogt, Esquire, sent Mr. Wolf a check payable to Ms. Hinton for $50,000.00.  The accompanying letter indicated, in pertinent part, as follows:

The understanding is that the payment of this amount is in the form of an additional deposit and acts to extend the Approval Period for 6 months through September 30, 2008 and further that beginning October 1, 2008 the Buyer may at its option further extend the Approval Period on a month to month basis

upon the payment of additional deposits in the amount of $5,000 per month.

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit F (Vogt Letter, 4/2/08).

MPL continued to pay the Trust $5,000.00 per month for one year from October 2008 through September 2009. On September 16, 2009, Attorney Wolf sent Attorney Vogt an email stating that the Approval Period would expire on September 30, 2009. Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit G (Wolf Email, 9/16/09). Notwithstanding this email, MPL sent $5,000 checks in October, November, and December 2009, and January 2010. Appellees did not cash these checks. Trial Court Opinion, 6/27/14, at 4.

MPL filed its complaint on May 31, 2011, alleging Appellees breached the Agreement by failing to negotiate the final four payments and thus, failed to "adhere to the terms of the April 2, 2008 letter." Complaint, 5/31/11, at ¶ 29. MPL sought return of the $200,000.00 in deposits it paid to Appellees under the terms of the Agreement, plus additional costs including attorneys' fees. *Id*. at ¶ 30. Appellees filed an answer and new matter on July 28, 2011. Answer, 7/28/11. Following discovery, Appellees moved for summary judgment on September 3, 2013, arguing primarily "that the April 2 letter had no binding effect and that under the terms of the Agreement, [the Trust was] entitled to retain the deposits." Trial Court

Opinion, 6/27/14, at 4; Appellees' Motion for Summary Judgment, 9/3/13, at 3.

On June 27, 2014, the trial court granted Appellees' motion for summary judgment. MPL filed a notice of appeal on July 24, 2014. Both the trial court and MPL complied with Pa.R.A.P. 1925.

MPL raises the following issues in its brief:

I. Whether the trial court erred in determining that there was no genuine issue of material fact regarding the parties' interpretation of the Agreement of Sale, Addenda and April 2, 2008 letter?

II. Whether the trial court erred in applying paragraphs 11. b. (iii) and 11. c. (iii) of the Agreement of Sale as being dispositive of the parties' intent?

III. Assuming arguendo that the parties did not have a mut[u]al understanding as to the terms of the April 2, 2008 letter, did the trial [c]ourt err in determining Appellant Monroe-Pike Land, LLC was not entitled to a refund of the additional deposits made in reliance upon its interpretation of the April 2, 2008 letter?

MPL's Brief at 2.

Preliminarily, we note that despite putting forth three separate issues in its Statement of Questions Involved pursuant to Pa.R.A.P. 2116, MPL fails to divide its argument "into as many parts as there are questions to be argued . . . nor does it "have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a); MPL's Brief at 12–28. Indeed, MPL presents one

- 8 -

contention in the argument section of its brief, asserting that the "primary issue in this case is whether Charles Vogt's letter of April 2, 2008[,] acted to modify the underlying Agreement." MPL's Brief at 14—15. As we decided in *Cigna Corp. v. Executive Risk Indem., Inc.*, ___ A.3d ___, 2015 PA Super 43, *5 n.9 (Pa. Super. Filed February 27, 2015), however, we do not find the issue waived.

When addressing summary judgment, our scope of review is plenary, and "we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact." *Nat'l Cas. Co. v. Kinney*, 90 A.3d 747, 752 (Pa. Super. 2014). Our Supreme Court has described the applicable standard of review as follows:

> An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 2015 PA Super 8 at *3 (Pa. Super. 2015) (internal citations omitted). "The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion." *Nat'l Cas. Co.*, 90 A.3d at 753 (citing *Caro v. Glah*, 867 A.2d 531, 533 (Pa. Super. 2004)).

As noted by the trial court, the parties "do not quarrel over the meaning of the Agreement's express terms." Trial Court Opinion, 6/27/14, at 6. Rather, at issue "is the April 2 letter and its legal effect, if any." *Id*. MPL argues that Attorney Vogt's letter of April 2, 2008, modified the underlying Agreement. MPL asserts that despite the fact that the Fourth Addendum allowed it to extend the Approval Period beyond March 30, 2008, there is no provision in the Agreement that controls such an extension. Thus, it contends, "the parties were left to negotiate their own terms with regard to extension of the Approval Period," and that was the import of the April 2, 2008 letter. MPL's Brief at 17. MPL maintains that upon paying the $50,000.00 followed by the monthly $5,000 payments, it was "under the absolute belief that the monthly extensions of the Approval Period were open-ended as long as [MPL] kept making the monthly $5,000.00 payments." *Id*. at 18. MPL suggests that the wording of the April 2, 2008 letter, in conjunction with the Agreement, are patently clear and contain no ambiguities. Other than cases citing applicable standards, it cites no case law in support of its position. In the alternative, MPL asserts that the

April 2, 2008 letter contains ambiguous terms, making the case inappropriate for a grant of summary judgment. ***Id***. at 22.

Appellees' position is that the April 2, 2008 letter merely confirmed MPL's preexisting right to an extension of the Agreement through September 30, 2009. They posit the April 2nd letter did not propose an extension in perpetuity. Instead, the check MPL sent with the April 2, 2008 letter was merely payment, as outlined in the Agreement, to secure an extension through September 30, 2008. Appellees further contend that Attorney Vogt conceded this fact in an email, discussed *infra*.

The motion for summary judgment includes copies of emails between Attorneys Vogt and Wolf on April 1, 2008, and April 2, 2008. Appellees assert that in an email from MPL's counsel, Mr. Vogt, to Mr. Wolf of the Trust, MPL forwarded the draft of a fifth addendum proposing to extend the approval period indefinitely. Appellees' Brief at 2. While the attachment referenced in the email is not identified in the certified record, the email states as follows:

> In an effort to clarify where we are on this and confirm what I believe is the Buyer's obligation to begin approval period extension payments, I have drafted the attached. If this is acceptable, let me know and I will get Bob's signature and the first check for delivery to Mrs. Hinton.

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit F (Vogt Email, 4/1/08, 11:57 A.M.).

Appellees responded that per the Agreement, the Approval Period could be extended for six months through September 30, 2008, if MPL paid a lump sum of $50,000.00. Thereafter, the Approval Period could be extended on a month-to-month basis—not indefinitely—through September 30, 2009, at the cost of $5,000 per month. All of these funds would be credited toward the final purchase price "or forfeited if the transaction is terminated by" MPL. That *verbatim* email is as follows:

> I reviewed my prior emails to Mrs. Hinton on the Agreement of Sale extension of Approval Period issue. These communications date back to the Fourth Addendum signed back in June. My recollection is that the Fourth Addendum extended the Approval Period through 3/30/08. The existing provisions of the Agreement already provided for a six (6) month extension of the Approval Period through 9/30/08 for a lump sum extension fee to the Trust of $50,000. The Approval Period could then be extended through 9/30/09 on a month to month basis with additional monthly deposits of $5,000. All funds paid to the Trust would be credited toward the Purchase Price or forfeited if the transaction is terminated by Buyer.
>
> If I am correct, the attached Fifth Addendum would modify the existing terms of the Agreement. Your thoughts?

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit F (Wolf Email, 4/1/08, 12:19 P.M.).

MPL replied, attempting to clarify whether all lump-sum payments had previously been paid, and asking, if not, whether MPL then owed an additional $50,000. That email from Attorney Vogt, in total, stated as follows:

> I thought all lump sum deposits had been paid. Apparently $75,000 has been paid. You are saying $50,000 more is now

- 12 -

due bringing that total to $125,000 and then in six months the $5,000 per month starts—correct?

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit F (Vogt Email, 4/1/08, 3:31 P.M.).

Appellees' attorney responded affirmatively. Mr. Wolf replied as follows:

That was my analysis back in June, 2007. I believe that it was based on the conclusion of the Feasibility Period and start of the Approval Period as discussed in the original Agreement. It certainly is worth taking another look at the original Agreement and modifications per the Addenda.

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit F (Wolf Email, 4/1/08, 4:22 P.M.).

The next day, apparently having reviewed an unsigned preliminary draft instead of the final addendum to which the parties had agreed, MPL wrote back in agreement, indicating that either he or his client had been confused about the terms of one of the addenda. Mr. Vogt wrote:

It appears you may be correct. I reviewed this with Bob[2] and his bookkeeper and an old draft addendum was apparently not the one signed. I have a check from Bob for the $50,000 which I will send with a cover letter for your delivery to Mrs. Hinton.

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit F (Vogt Email, 4/2/08, 3:20 P.M.). The proposed fifth addendum was not signed.

---

2  Bob is presumably Robert Brown, MPL manager, who signed the Agreement for MPL.

As September 30, 2009, approached, Attorney Wolf of the Trust sent Attorney Vogt of MPL an email on September 16, 2009, summarizing the events up until that point and asking how MPL wished to proceed. That email, *verbatim*, stated as follows:

> I had to blow the dust from the yellowed pages of my file to research the significance of the end of this month (9/30/09, not 9/25/09) with respect to the Agreement of Sale. The Fourth Addendum signed by Bob on 7/19/07 extended the Approval Period through 3/30/08 for an additional payment of $50,000. Thereafter, he has exercised his right to extend the Approval Period for an additional 12 months at $5,000 per month. That would get us to 9/30/09. The Approval Period time frame is set forth in Paragraph 11 of the original Agreement. Please let me know how Bob wants to proceed. Thanks.

Appellees' Motion for Summary Judgment, 9/3/13, at Exhibit G (Wolf Email, 9/16/09, 2:51 P.M.).

MPL maintains that the April 2, 2008 letter and Appellees' subsequent actions reflect an acceptance of the letter's terms, and that Appellees' failure to negotiate the deposit checks after September 2009 was a breach of the Agreement. Appellees assert that the April 2, 2008 letter "merely commemorated the emails between counsel confirming that a 5th Addendum was unnecessary because MPL already had an extension through September 2009." Appellees' Brief at 9. Appellees contend the April 2, 2008 letter was merely MPL's attempt to negotiate a fifth addendum providing for an open-ended Approval Period.

"The goal of contractual interpretation is to ascertain the intent of parties at the time they entered the disputed agreement and to give effect

- 14 -

to the agreement's terms." *Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 610 (Pa. Super. 2009). "In cases of a written contract, the intent of the parties is the writing itself." *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011). "[I]n determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009).

We agree with the trial court that a plain reading of the Agreement and the four addenda, "notwithstanding the support offered by the April 2, [2008] letter and series of emails between the parties' attorneys," compels the conclusion that Appellees did not breach the Agreement by refusing to negotiate any of the checks received after September 30, 2009. Trial Court Opinion, 6/27/14, at 8. We rely on the trial court's reasoning, as follows:

> As originally drafted and executed on August 4, 2005, the Agreement provided [MPL] with nine months from the date of execution to obtain approvals from the township. Under the third addendum, the parties agreed that the original nine-month Approval Period would not begin to run until January 1, 2007, and would expire on September 30, 2007, "unless extended as provided." Under the fourth addendum, the parties agreed to increase the original Approval Period by an additional six months through March 30, 2008. At no point, however, did the parties agree to modify the terms of Paragraph 11(b)(iii), which permitted [MPL], in the event it had not obtained the necessary approvals within the Approval Period, to extend the Approval Period "for an additional Six (6) months . . . by paying an additional deposit in the amount of $50,000 to [Appellees] by [MPL's] plain check (the "Extension Deposit") sent not later than the end of the Approval Period." ([Appellees'] Mot. Ex.A.) For the purposes of Paragraph 11(b)(iii), the original Approval Period ended on March 30, 2008, meaning that [MPL] had the option to

- 15 -

extend the Approval Period until September 30, 2008, by providing a $50,000 lump sum payment to [Appellees]. And this is exactly what [MPL] did, as evidenced by the April 2 letter and the set of emails the parties' attorneys exchanged. In the April 2 letter, [MPL's] attorney specifically wrote that "the understanding is that the payment of this amount is in the form of an additional deposit and acts to extend to the Approval Period for 6 months through September 30, 2008." This language is entirely consistent with the terms of Paragraph 11(b)(iii).

So, too, was [MPL's] attorney's note in the April 2 letter "that beginning October 1, 2008 [MPL] may at its option further extend the Approval Period on a month to month basis upon the payment of additional deposits in the amount of $5,000 per month." As previously noted, Paragraph 11(c)(iii) allowed for [MPL] to further extend the Approval Period "on a month to month basis for up to twelve (12) additional months . . . by the payment of FIVE THOUSAND ($5,000.00) DOLLARS per month." Without further written amendment, the Agreement did not provide for any extension of the Approval Period beyond twenty-seven months.[3]

> [3] The Agreement allowed for an initial nine-month Approval Period, followed by the additional six-month period at the cost of $50,000 and the final month-to-month period for up to twelve months as the cost of $5,000 per month for a total of twenty-seven months.

Despite claims to the contrary now, [MPL's] understanding of these provisions was demonstrated through its remittal of the $50,000 check with the April 2 letter in order to extend the Approval Period through September 30, 2008, and the subsequent $5,000 checks that it sent to [Appellees] each month to extend the Approval Period through September 30, 2009. By returning the checks that [they] received for October, November and December of 2009 and January 2010, [Appellees] exhibited [their] understanding of the Agreement, an understanding that perfectly coincided with the terms of Paragraph 11 and reflected the mutual understanding of the parties' attorneys, as expressed in the April 2 letter.

Despite all of this, [MPL] argues that the April 2 letter was actually an offer to modify the terms of the Agreement to reflect an open-ended Approval Period, an offer [Appellees allegedly] demonstrated acceptance of through [their] subsequent actions. [MPL] makes this argument despite an express provision in the Agreement that any modifications to the Agreement had to be made in writing and signed by both parties. Under Paragraph 23, the Agreement "may not be modified or terminated, unless in accordance with the terms of the Agreement, except by a writing signed by the parties." The parties, evidently fully aware of this provision and its requirements, acted in accordance with it four times, as expressed by each of the addenda. Conversely, the much-discussed and long-negotiated fifth addendum never came to fruition, as the parties could not reach agreement on how to extend the Approval Period, whether by a set term or on an open-ended basis.

Trial Court Opinion, 6/27/14, at 8–10.

The trial court went on to reference the Agreement's provision that it "may not be modified or terminated, unless in accordance with the terms of the Agreement, except by a writing signed by the parties." Agreement, 8/4/05, at ¶ 23. Acknowledging that parol negotiation still may alter such an agreement, the trial court stated that here, MPL could not show a modification.

[MPL] freely admits that the parties never reached agreement on the terms of a fifth addendum, whether in writing or orally, and offers no evidence of any other express agreement. [MPL] argues that by accepting and negotiating the $50,000 check and the subsequent $5,000 checks, [Appellees] acquiesced to what it argues are the terms of the April 2 letter. As previously discussed, [Appellees] did no such thing. [Appellees] cashed all of the checks received between April 2, 2008, and September 30, 2009, because [Appellees were] acting in accordance with the terms of Paragraphs 11(b)(iii) and (c)(iii) from the original Agreement, terms that [MPL] had agreed to and its attorney was aware of, as evidenced by the email chain between the parties' attorneys.

- 17 -

Trial Court Opinion, 6/27/14, at 11.

Thus, we conclude that as the April 2, 2008 letter merely expressed "a mutual understanding of certain original terms of the Agreement," it did not constitute a modification of the original terms. Trial Court Opinion, 6/27/14, at 12. The parties did not agree to a Fifth Addendum, either orally or in writing, and Appellees' actions following receipt of the April 2, 2008 letter were in accordance with paragraphs 11(b)(iii) and 11(c)(iii) of the Agreement. *Id*. Therefore, the trial court did not err in concluding that the matter presented no genuine issue as to any material fact, and it is clear that Appellees were entitled to judgment as a matter of law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015