J-A14042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SWEPI LP, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HARVEY AND BOBBI JO WOOD, | |
| Appellees | No. 1945 MDA 2015 |

Appeal from the Order Entered October 6, 2015
In the Court of Common Pleas of Tioga County
Civil Division at No.: 59 CV 2011

BEFORE:  BOWES, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 07, 2016**

Appellant, SWEPI LP,[1] appeals from the grant of summary judgment in favor of Harvey and Bobbi Jo Wood, husband and wife, Appellees, after it brought an action for declaratory judgment in this oil and gas lease dispute. This case returns to us after remand.[2]  We are constrained to conclude that in granting summary judgment the trial court overlooked genuine issues of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Shell Western E & P (Exploration and Production) Inc. LP.

[2] Appellees previously appealed from a prior order granting a preliminary injunction to Appellant.  This Court reversed and remanded, concluding that the trial court improperly granted permanent relief in the nature of a final injunction instead of preliminary relief to maintain the *status quo*.  (**See SWEPI LP v. Wood**, No. 619 MDA 2011, unpublished memorandum at *12 (Pa. Super. filed February 6, 2012)).  The decision did not address any other issues presented by Appellees.  (**See id.**).

material fact. Also, we conclude that the trial court does not appear to have viewed the evidence of record in the light most favorable to Appellant as the non-moving party. Accordingly, we are constrained to vacate the order of summary judgment and remand for trial on the merits.

The facts of this case are rather convoluted, but the legal issues for disposition are relatively straightforward. We derive the facts pertinent to our review from the trial court's opinion and our independent review of the record. (*See* Trial Court Opinion, 12/28/15, at 1-3).

Both parties are successors in interest to their respective rights. Appellees own a farm acquired from Harvey Wood's "stepfather," Roderick Parthemer.[3] On November 21, 2000, Mr. Parthemer executed an oil and gas lease as lessor of the property, in favor of Allegheny Energy Development Corporation as lessee, for a primary term of five years. The lease provided for an optional five-year extension on stated terms, as follows:

> Lessee may extend the primary term for one additional period equal to the primary term by paying to Lessor at any time within the primary term an Extension Payment equal in amount to the annual Delay Rental as herein described, multiplied by a factor of *-0-*, or by drilling a well on the Leasehold which is not capable of commercial production.

---

[3] Although no longer Harvey's actual stepfather, Roderick Parthemer was previously married to Harvey's mother. They divorced in the mid-'90's. Mr. Parthemer remarried (someone else), but has since been widowed. (*See* N.T. Hearing, 2/22/11, at 108-09).

(Plaintiff's Exhibit 3, Oil and Gas Lease between Allegheny Energy Development Corporation and Roderick P. Parthemer, 11/21/2000, at 1). The zero was manually inserted into the preprinted paragraph.

The lease was duly notarized and recorded. Appellant SWEPI eventually acquired the oil and gas lease interest originally executed by Allegheny. Appellant claims drilling rights under the Allegheny lease, as extended for a second five-year term.

Appellees maintain that the Allegheny lease expired at the end of its original five-year term, and they re-leased the oil and gas rights to another party (the "Fortuna" lease).[4]

Notably, after Appellees acquired their farm from Mr. Parthemer they failed to file appropriate notice and supporting documentation with Appellant's predecessor, East Resources, successor in interest to Allegheny. Accordingly, East Resources continued to make payments due under the lease to Mr. Parthemer, who would then sign checks over to Appellees. (*See id.* at 1-2).

After years of collecting royalties through Mr. Parthemer, Appellees ejected SWEPI personnel from their property when they entered it to begin surveys in preparation for drilling. Appellees asserted that the Allegheny

---

[4] While not affecting our disposition, we note for the sake of completeness that in January 2010 East Resources acquired the Fortuna lease. Appellant acquired East Resources in May of 2010. (*See* Trial Ct. Op., at 2).

lease had expired after the original term of five years, on November 21, 2005. They denied that any of the fees they received, either directly or through Mr. Parthemer, represented the fee for extension of the term specified in the lease. They similarly denied receiving notice of any exercise of the extension either directly or through Mr. Parthemer.

At a hearing on a preliminary injunction, Mrs. Wood conceded they preferred a subsequent lease, the Fortuna lease, which offered them better terms. (*See* N.T. Hearing, 2/22/11, at 135). Appellant maintains that Appellees had accepted payments from its predecessors, directly or indirectly through Mr. Parthemer, including payment for the extension of the Allegheny lease for a second five-year term.

Appellees professed ignorance, or confusion, about the purpose of the payments, most notably the payment Appellant maintains was for the extension of the lease to a second five-year term. Mrs. Wood claimed at one point that they appeared to be regular royalty payments (under the original term of the Allegheny lease). At another point, Mr. Wood speculated that the payments might have been a "gift." (*See* Appellant's Brief, at 34-35 n.21; *see also* N.T. Hearing, 2/22/11, at 159).

On October 6, 2015, the trial court granted summary judgment in favor of Appellees, finding that the Allegheny lease had expired "as a matter of law" on November 20, 2005. (Trial Ct. Op., at 4). The trial court reasoned that the extension-of-term clause under which Appellant SWEPI

claimed was void for lack of consideration. It based this conclusion on the manual insertion of "*-0-*" into the preprinted clause which provided, in pertinent part, for the calculation of the payment for extension, so that the finalized clause to extend the lease required "an Extension Payment equal in amount to the annual Delay Rental as herein described, multiplied by a factor of '*-0-*'[.]" [5] (*Id.* at 6).

Adopting the argument advocated by Appellees, the trial court professed to apply mathematical principles,[6] specifically, that multiplying anything by a factor of zero yields zero. (*See id.* at 6). Thus, it reasoned, the extension provision lacked consideration, because it called for a payment of "zero dollars." (*Id.*). The trial court decided this provision was unambiguous, and dismissed Appellant's argument to the contrary as "grammatical gymnastics[.]" (*Id.*).

The court further decided that because there was no contract, claims of waiver, estoppel, and ratification did not apply. (*See id.* at 7). It also rejected Appellant's assertion that the statute of limitations had expired on Appellees' counterclaims. (*See id.* at 8). This timely appeal followed.[7]

---

[5] The Delay Rental Fee was set at $888.

[6] Both Appellees and the trial court say "principals."

[7] Appellant filed a concise statement of errors on December 3, 2015 (postmarked on December 1). The trial court filed an opinion on December 28, 2015. *See* Pa.R.A.P. 1925.

Appellant presents three questions on appeal:

> 1. Did the trial court err in finding the lease to be unambiguous and expired as of November 21, 2005?
>
> 2. Did the trial court err in finding that, as a matter of law, the doctrines of waiver, estoppel, and/or ratification do not prohibit [Appellees] from challenging the validity of the Extension of Term provision?
>
> 3. Did the trial court err when it granted [Appellees'] motion for summary judgment notwithstanding the fact that [Appellant] raised a statute of limitations defense?

(Appellant's Brief, at 2-3) (unnecessary capitalization omitted).

Our standard and scope of review are well-settled.

> As our Supreme Court reiterated in **Gilbert v. Synagro Cent., LLC**, 131 A.3d 1, 10 (Pa. 2015) (citing **Basile v. H & R Block, Inc.**, 761 A.2d 1115, 1118 (Pa. 2000)), an appellate court's scope of review of an order granting summary judgment is plenary. Our standard of review is that "the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion." **Id.** Furthermore,
>
>> [s]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.
>
> **Gilbert**, **supra** at 10.

**Telwell Inc. v. Grandbridge Real Estate Capital, LLC**, ___ A.3d ____, No. 1713 EDA 2015, at *3-*4 (Pa. Super. filed July 21, 2016).

- 6 -

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

*Caro v. Glah*, 867 A.2d 531, 533 (Pa. Super. 2004) (quoting *Pappas v. Asbel*, 768 A.2d 1089, 1095 (Pa. 2001), *cert. denied,* 536 U.S. 938 (2002)).

We also observe that:

[An oil and gas] lease is in the nature of a contract and is controlled by principles of contract law. It must be construed in accordance with the terms of the agreement as manifestly expressed, and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement. Further, a party seeking to terminate a lease bears the burden of proof.

*T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012) (citations, internal quotation marks and other punctuation omitted).

As we undertake our analysis, we remind ourselves the judicial construction of instruments involving oil and gas is particularly troublesome. Pennsylvania case law evidences a long and tortured trail of attempts to make sense of phrases, parts of phrases, and words of art sometimes used in a common sense manner and sometimes used with a precise technical meaning, and all used in documents sometimes drafted with care and sometimes quickly scribbled by the litigants themselves. . . .

The legal effect of words clearly understood when used in other contexts, therefore, becomes murky when considered in the context of oil and gas instruments. . . . Applying the literal meaning to words and phrases found in oil and gas documents is fraught with the opportunity for injustice.

As a result, we must be mindful that the object in interpreting instruments relating to oil and gas interests, like any written instrument, is to ascertain and effectuate the intention of the parties.

*Szymanowski v. Brace*, 987 A.2d 717, 719–20 (Pa. Super. 2009), *appeal denied*, 997 A.2d 1179 (Pa. 2010) (citations and internal quotation marks omitted).

> In interpreting contracts, we are guided by the following principles:
>
>> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Id.* at 722 (citations and internal quotation marks omitted).

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. *See Murphy v. Duquesne Univ. Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 430 (2001) ("[C]ontractual terms are ambiguous if they are subject to **more than one reasonable interpretation** when applied to a particular set of facts." (emphasis added)). Furthermore, reviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law.

*Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (some citations and internal quotation marks omitted) (emphasis added in original).

When determining the nature of the right or estate created by an instrument, the court will consider the document as a whole, without regard to its formal division into parts and may refer to the habendum clause when the terms of the grant under an oil and gas extraction agreement are ambiguous.

**Hetrick v. Apollo Gas Co.**, 608 A.2d 1074, 1079 (Pa. Super. 1992) (citation omitted).

Here, on independent review, we are constrained to conclude that the trial court's rationale does not ascertain or give effect to the intent of the parties as reasonably manifested by the language of their written agreement. Rather, we find the trial court's attempt at a literal application of a textbook mathematical principle to interpret the intent of parties to an oil and gas lease to be a strained contrivance not supported by the facts of record or any controlling caselaw. Aside from a string of citations for general principles, the trial court offers no pertinent authority in support of its specific methodology. Labelling a problematical provision as "unambiguous" does not relieve the trial court of the obligation to provide pertinent controlling authority for its legal conclusions. Here, the trial court offers none. (**See** Trial Ct. Op., at 5).

Furthermore, the trial court in reaching its conclusion failed to review the facts of record in the light most favorable to the non-moving party.[8]

_____

[8] The trial court emphatically denies reliance on oral testimony for its contract interpretation, insisting its decision is based "solely" on the unambiguous language of the lease. (Trial Ct. Op., at 6). Nevertheless, as
_(Footnote Continued Next Page)_

Arguably ambiguous actions, such as the acceptance of fees which Appellant maintains included the term extension fee, required review in the light most favorable to Appellant as the non-moving party, not to Appellees as the movants. All doubts as to the existence of a genuine issue of material fact should have been resolved against Appellees as the moving party. **See Caro**, **supra** at 533.

Furthermore, nothing of record supports the trial court's conclusion that the drafter, or for that matter, **either** party to the original lease (let alone the assignees who are the litigants here), intended the language employed or the manually inserted zero to be a mere mechanical application of the zero property of multiplication. Similarly, there is nothing of record to indicate that the parties intended to nullify the operation of the extension provision *sub silentio* by the expedient of multiplying it by zero. The trial court's conclusion rests on mere unsupported speculation.

While inartfully constructed, the extension provision could reasonably be interpreted to mean that it became operative on payment of the "delay rental" ($888) with no multiple applied to increase the payment. As the trial

*(Footnote Continued)* _____

noted by Appellant, the court explains away inconsistent acts by Appellees as excused by their incorrect "impression" of the nature of fees received (which Appellant claims to be payments for the lease extension), as regular rental payments. The court also ignored Mr. Wood's alternative explanation of a gift. The trial court erred in accepting one litigant's subjective impression as justifying a summary judgment as "a matter of law." (**Id.** at 4). The inconsistent explanations presented a genuine issue of material fact.

court suggests, however implausibly, the intent of the parties may have been to render the entire provision inoperable. Reading the clause literally, a third alternative is that the extension provision could be operative **without** the payment of **any fee** ("0").

We conclude that the provision at issue is highly ambiguous. Ambiguous writings are to be interpreted by the finder of fact. **See Trizechahn**, **supra** at 483. The trial court erred in granting summary judgment as a matter of law on an issue that should have been presented to the jury. The court also erred in not viewing the record in the light most favorable to Appellant as the non-moving party.

Finally, we note that the trial court reasoned that the lease was void for lack of consideration because it called for a payment of "zero dollars." (Trial Ct. Op., at 6). We are constrained to disagree.

We note Appellant's argument that the lease contract was under seal. The general rule, with exceptions not pertinent here, is that a seal imports consideration. **See Socko v. Mid-Atl. Sys. of CPA, Inc**., 126 A.3d 1266, 1270 (Pa. 2015). The rule is well-settled. **See Selden v. Jackson**, 230 A.2d 197, 197 (Pa. 1967) ("[A] plaintiff who relies upon a sealed instrument is not obliged to prove consideration to take the case to the jury. The seal imports consideration."). Even if we were to accept the trial court's "factor of zero" interpretation for the sake of discussion, it would not render the contract void. We are constrained to conclude the trial court erred in

granting summary judgment to Appellees. The trial court should have denied summary judgment and proceeded to a trial on the merits.

Because our conclusion requires remand to the trial court for trial, we need not address any other issue presented by Appellant at this time, and we decline to do so.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016