# Barshady, Appellant, *v.* Schlosser.

Argued September 12, 1973.   Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Robert A. Ebenstein,* with him *Fine, Staud, Grossman & Garfinkle,* for appellant.

*Sidney L. Wickenhaver,* with him *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION PER CURIAM, November 21, 1973:

The six Judges who heard this appeal being equally divided, the order is affirmed.

————

OPINION BY HOFFMAN, J., In Support of Reversal:

This appeal presents the question of whether the statute of limitations may bar an action by a plaintiff who does not learn of a surgical injury until more than two years after the operation.

On April 25, 1961, Dr. Woodrow D. Schlosser, a noted surgeon specializing in the field of otolaryngology, performed an operation on the appellant's middle ear. The purpose of the surgery was to attempt a cure of tympanosclerosis which was causing loss of hearing to the appellant. Immediately after surgery, appellant experienced severe pain, rawness of the tongue, and numbness of the face and tongue. She complained of these symptoms to Dr. Schlosser, who assured her that the condition was temporary, being primarily due to an emotional reaction to the surgery. Appellant continued under the care of the appellee from April, 1961 to March, 1963, and received a continuous series of treatments to alleviate her ailments. As late as March, 1963, Dr. Schlosser assured his patient that the condition was temporary.

As her symptoms did not subside, appellant began to consult other physicians, among whom was one Dr. Pegues, a neurologist. Upon physical examination, Dr. Pegues discovered that there was injury to the chorda tympani nerve, which resulted in loss of taste and numbness to the anterior two-thirds portion of the left side of the tongue.

On February 9, 1965, appellant commenced a trespass action against the appellee, Dr. Schlosser. The Complaint charged the defendant with negligent performance of surgery and with failure to warn of future

complications. At time of trial, the appellant elected to proceed solely on the theory of lack of "informed consent." As part of her case, the appellant called Dr. Pegues who testified that, in his opinion, the loss of taste was attributable to damage to the chorda tympani nerve caused by the 1961 surgery. Dr. Schlosser, who was called as on cross-examination, testified that he had fully described the proposed surgery and that it carried with it a high percentage of recurrence and further loss of hearing. He admitted that he did not inform the appellant of the possible damage to the chorda tympani nerve, although it was a common type of complication. He further denied damage to the nerve as a result of the surgery, saying that he had completely avoided the nerve as he operated on the middle ear.

At the close of plaintiff's case, defendant filed a motion for nonsuit on the basis of the Statute of Limitations. That motion was granted by the Court. Post-trial motions were denied by a court en banc, and this appeal followed.

The Act of June 24, 1895, P. L. 236, §2, 12 P.S. §34, provides:

"§34. *Limitation in cases of personal injury*

Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law."

Despite the seemingly mandatory nature of this section, certain exceptions to the rule have evolved as part of our case law. As the Supreme Court of Pennsylvania said in *Walters v. Ditzler*, 424 Pa. 445, 449, 227 A. 2d 833 (1967):

"Presently pertinent are certain well settled legal principles: (a) mere mistake, misunderstanding or

lack of knowledge do not toll the running of the statute of limitations . . .; (b) if, through fraud, deception or concealment of facts, . . . [a defendant] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then [the defendant] is estopped from evoking the statute . . .; (c) the fraud which will toll the statute and effect an estoppel need not be fraud in the strictest sense, i.e., inclusive of an intent to deceive, but may be fraud in the broad sense, i.e., inclusive of an unintentional deception: *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 96, 204 A. 2d 473 (1964); *Schwab v. Cornell,* 306 Pa. 536, 160 A. 449 (1932) . . ."

Even where no fraud or concealment of facts may be proven, the law permits a party to bring a cause of action after the statutory period of limitations has passed where the existence of the injury is not known and where such knowledge cannot be reasonably ascertained. As our Supreme Court said in *Ayers v. Morgan,* 397 Pa. 282, 154 A. 2d 788 (1959), where a sponge left during surgery was not discovered until after the two-year period of limitations had passed:

"Both the defendant and the lower court have apparently misevaluated the specific wording of the Act of June 24, 1895 (Statute of Limitations). . . . The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable. . . . It must be borne in mind that this is not a case where the act of negligence was known to the plaintiff but the extent of the damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations. On the contrary, this is a case where the plaintiff did not know of the act (which eventuated in injury to him) at the time *that* act occurred." **397 Pa. at 289-290.**

In the instant case, both exceptions cited above apply and the earliest the statute of limitations can be

said to run is March of 1963. The appellant confronted her surgeon with her symptoms and ailments immediately after the operation. Having absolute confidence in the judgment of her physician, as is the case in many physician-patient relationships, she believed the appellee's statement that the pain was an emotional reaction to surgery and the numbness would be temporary. So confident was she, that despite the ongoing nature of her symptoms appellant continued her treatments with the appellee until March, 1963. We believe that appellant's delay in seeking other medical advice was a reasonable one, prompted by her faith in her physician. While the concealment of the cause of her symptoms cannot be said to rise to "fraud" or 'deception," we hold that the assurances of the physician lulling his patient into a false sense of security acted as "concealment," thereby tolling the statute until March, 1963. Our computation is justified further by the continuous course of treatment followed by the appellant with the appellee surgeon from the date of surgery until March, 1963. See, *Plazak v. Allegheny Steel Corp.*, 324 Pa. 422, 188 A. 130 (1936).

The second exception is likewise applicable to the instant case. Appellant contends that the damage to the chorda tympani nerve was not ascertainable until after discontinuing her treatments with Dr. Schlosser. It was not until Dr. Pegues determined by physical examination that there was loss of taste on the left side of appellant's tongue. It was pointed out at trial that such loss of sensation and "numbness" were not physical signs readily experienced or discovered without medical examination. During the two years following surgery, the appellant who had been under the continuous treatment of the appellee could not reasonably have been expected to ascertain the cause of her symptomology. Instead, she could only conclude, based

on the appellee's assurances, that her maladies were temporary and would disappear with time.

While the appellant was symptomatic since 1961, and while physical examination would have determined the extent of injury as early as 1961, to compute the running of the statute of limitations from that date simply is not the law. Because of appellant's reasonable reliance on appellees representations, we conclude that the statute was tolled until March, 1963, at which time appellant was first able to ascertain the *cause* of her injury. *Ayers v. Morgan,* supra. In our opinion that was the crucial factor. Logic and judicial fairness compel no other result.

By our holding, we do not make any determination on the merits of appellant's case. It is for the jury to determine if the injury suffered by the appellant as a result of delicate surgery to the middle ear is the kind of risk or consequence which the physician had to make known to his patient. A physician, after all, is not required to educate his patients in a condensed course in medicine. "The physician is bound to disclose only those risks which a reasonable man would consider material to his decision whether or not to undergo treatment. This standard creates no unreasonable burden for the physician." *Cooper v. Roberts,* 220 Pa. Superior Ct. 260, 267, 268, 286 A. 2d 647 (1971). We do not decide today either the questions of causation or the lack of informed consent. Those questions are properly left to the jury as fact-finder. We only decide that the appellant should have gone to the jury with her case, and that the statute of limitations was not a bar to her action.

Judgment of nonsuit should be reversed, and the case remanded for a new trial.

WATKINS and CERCONE, JJ., join in this opinion in support of reversal.