Rosezetta Marie WARD, Appellant,

v.

Jeffrey W. RICE, D.M.D. and Jeffrey
W. Rice, D.M.D., P.C., Appellee.

Superior Court of Pennsylvania.

Argued March 25, 2003.
Filed June 27, 2003.

Patrick J. Loughren, Pittsburgh, for appellant.

Allen P. Neely, State College, for appellee.

BEFORE: JOHNSON, KLEIN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Rosezetta Marie Ward appeals the entry of summary judgment in favor of Jeffrey W. Rice, D.M.D., and Jeffrey W. Rice, D.M.D., P.C. Appellant alleges that the trial court erred in dismissing the suit as time-barred. We reverse.

¶ 2 Pennsylvania Rule of Civil Procedure 1035.2 provides that any party

may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

> In addition, we are mindful that in considering a motion for summary judgment the court must examine the record in the light most favorable to the non-moving party; that the court's function is not to decide issues of fact but merely to determine whether any such issues exist; and that all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. We also note that "ordinarily most questions relating to the applicability of the defense of the statute of limitations are questions of fact to be determined by the jury." Specifically, the questions of whether a plaintiff has exercised due diligence in discovering the incidence of his injury is usually a jury question. "Whether the statute has run on a claim is usually a question of law for the judge, but where, as here, the issue involves a factual determination, i.e. what is a reasonable period, the determination is for the jury."
>
> This is not to say that there are not instances where summary judgment may be ordered in malpractice actions based upon a statute of limitations defense. Entry of summary judgment is proper where the plaintiff fails to plead facts sufficient to toll the statute, or

admits facts sufficient to admit the limitations defense ... or fails in his response, by affidavits, or as otherwise provided, to set forth facts showing that there is a genuine issue for trial or where the evidence relied upon by the plaintiff is inherently incredible.

*Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181, 183–184 (1981) (citations omitted).

¶ 3 On March 28, 1995, Appellant had her "wisdom teeth" extracted. The surgery was performed by Dr. Rice after a diagnosis that all four of Appellant's third molars were impacted and in need of removal. Immediately after surgery, Appellant experienced "some numbness and occasional tingling" in her lip. She communicated this condition to Dr. Rice during the first visit following surgery on April 5, 1995. Dr. Rice informed Appellant "it would get better, it would go away." These remarks were repeated after each of Appellant's visits on April 19th, April 26th, May 3rd, May 17th and May 31st of 1995. In particular, Dr. Rice cautioned that Appellant would have a "return of feeling in two months," this period expired without improvement.

¶ 4 On July 5, 1995, Appellant asked Dr. Rice for a referral to secure another opinion. It was not until September 20, 1995, that Dr. Rice directed Appellant to Dr. Kaltman at Allegheny General Hospital in Pittsburgh. Appellant was examined on October 11, 1995, and Dr. Kaltman discussed two options: nerve graft and surgery, the latter of which was not recommended because there was no guarantee it would alleviate the problem. Also, Dr. Kaltman stated that he would not "do that kind of surgery" and that Appellant's condition was not permanent.

¶ 5 Dr. Rice referred Appellant to a second oral surgeon (Dr. Sotereanos) in

Pittsburgh on March 4, 1996. At this point, Appellant's condition had "gotten worse"—numbness moved to the center of the mouth and speech and chewing became difficult. Dr. Sotereanos advised Appellant there was no guarantee her condition ("pain" and "numbness") would improve with surgery.[1]

¶ 6 On September 26, 1997, Appellant filed a writ of summons. This was followed by a complaint alleging "battery" (at Count I), in that Dr. Rice failed to inform her of all facts, risks and alternatives associated with the surgery, and "negligence" (at Count II), in that Dr. Rice was negligent in his care, treatment and diagnosis of Appellant's condition. Appellees filed an answer and new matter raising the defense of the statute of limitations. Then, Appellees filed a motion for summary judgment asserting Appellant's claims were barred by the statute of limitations, which affirmative defense was not tolled by the "discovery rule" or "concealment" of the nerve damage occasioned by Dr. Rice. The trial court agreed with Appellees' statute of limitations argument, a defense not stayed by Appellant's "blind reliance" upon Dr. Rice's assurances of improvement, and "fraud or concealment" could not be established by clear, concise and convincing evidence.

¶ 7 This appeal ensued claiming the trial court erred in dismissing the lawsuit as time-barred by the statute of limitations and holding neither the discovery rule nor the doctrine of fraudulent concealment served to toll the statute of limitations.

¶ 8 In personal injury actions, the statute of limitations requires that suit be filed within two years of the date of the incident. 42 Pa.C.S.A. § 5524. Once the prescribed statutory period has expired, the individual is barred from bringing suit, unless some exception which tolls the statute of limitations can be proven. One such exception is the "discovery rule," which is premised on the concept that where the existence of an injury is not apparent or where the existence of an injury cannot be reasonably ascertained, the statute of limitations does not begin to run until such time as the injury's existence is known or discoverable by the exercise of reasonable diligence. *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959); *Bickford v. Joson*, 368 Pa.Super. 211, 533 A.2d 1029 (1987), *allocatur denied*, 518 Pa. 647, 544 A.2d 959 (1988). Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct. *Citsay v. Reich*, 380 Pa.Super. 366, 551 A.2d 1096, 1098 (1988).

¶ 9 An assessment of whether a plaintiff has exercised "reasonable diligence" in protecting her own interest requires an evaluation of Appellant's actions to determine whether she exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." Restatement (Second) Torts, § 283, Comment b. The standard of "reasonable diligence" is an objective standard. It is a community standard. It is sufficiently flexible, however, to take into account differences between persons, their capacity to meet certain situations and circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account

---

1. Despite the dismal medical forecasts, Appellant had oral surgery performed by Dr. Thomas Braun in November of 1998. Unfortunately, the surgery was unsuccessful because the nerve had been "trapped" in the jaw too long to be repaired.

the fallibility of human beings." Restatement (Second) Torts, § 283, Comment b and c. *Petri v. Smith,* 307 Pa.Super. 261, 453 A.2d 342, 347 (1982).

 ¶ 10 In *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978), appellant was injured on the job when an object struck her left eye on November 14, 1972. The day after the injury, appellant consulted the defendant/ophthalmologist, who recommended surgery of the detached retina. *Id.,* 393 A.2d at 1231. During the operation, a rupture in the sclera, or white portion, of appellant's eye caused it to hemorrhage. *Id.,* 393 A.2d at 1231. Within nine days of the injury and operation, appellant was released from the hospital. *Id.,* 393 A.2d at 1231. For the next several months, appellant remained in the defendant's care. *Id.,* 393 A.2d at 1231. She "was at all times advised that the operative procedure had corrected the problem with her eye and that it would just be a matter of time before her vision returned." *Id.,* 393 A.2d at 1231. Nowhere in appellant's complaint did she allege the defendant informed her that the condition of her eye was deteriorating. *Id.,* 393 A.2d at 1231.

¶ 11 In July of 1973, appellant terminated her association with the defendant, and, on August 9, 1973, appellant consulted another ophthalmologist who stated her left eye had deteriorated to the point it required surgery. *Acker,* 393 A.2d at 1231. On October 18, 1973, appellant had her eye surgically removed. *Id.,* 393 A.2d at 1231. A complaint was filed on July 30, 1975, which alleged negligence on the part of the defendant and hospital. *Id.,* 393 A.2d at 1231. Summary judgment was granted by the trial court because the statute of limitations had expired. *Id.,* 393 A.2d at 1231. On appeal, we reversed, and held, in pertinent part:

In effect, the Pennsylvania "discovery" rule delays the accrual of the cause of action from the time of the defendant's negligent conduct to a time when the injury caused by that conduct becomes known or knowable. It is, obviously, a rule intended to benefit the plaintiff. The fairness of the rule has been praised[.]

\* \* \*

*Barshady v. Schlosser,* 226 Pa.Super. 260, 313 A.2d 296 (1973) presented a factual pattern similar to the instant case. In *Barshady, supra,* plaintiff had surgery to correct a hearing loss. Immediately thereafter, plaintiff suffered severe pain, a raw tongue and numbness of the face and tongue. When she complained of these symptoms to defendant-physician, he assured her that her condition was temporary. Consequently, plaintiff continued under defendant's care for a period of almost two years. At this point, she consulted another physician and learned, for the first time, that she had sustained damage to the tympanic nerve. Plaintiff subsequently instituted a trespass suit against defendant. The trial court granted defendant's motion for a non-suit based on its finding that the statute of limitations period had expired by the time plaintiff filed her complaint. Because the vote of our Court was equally divided, we affirmed the lower court's order, without an opinion. However, the opinion by HOFFMAN, J. in support of reversal, is instructive in analyzing Pennsylvania's rationale for tolling the statute of limitations until such time as a reasonable person could have discovered the injury:

Despite the seemingly mandatory nature of [the statute of limitations] certain exceptions to the rule have evolved as part of our case law. As the Supreme Court of Pennsylvania

said in *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967):

"Presently pertinent are certain well settled legal principles: (a) mere mistake, misunderstanding or lack of knowledge do not toll the running of the statute of limitations ...; (b) if, through fraud, deception or concealment of facts,... [a defendant] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then [the defendant] is estopped from evoking the statute ...; (c) the fraud which toll the statute and effect an estoppel need not be fraud in the strictest sense, i.e., inclusive of an intent to deceive, but may be fraud in the broad sense, i.e., inclusive of an unintentional deception: *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 96, 204 A.2d 473 (1964); *Schwab v. Cornell*, 306 Pa. 536, 160 A. 449 (1932) ..."

Even where no fraud or concealment of facts may be proven, the law permits a party to bring a cause of action after the statutory period of limitations has passed where the existence of the injury was not known and where such knowledge cannot be reasonably ascertained ....

... [T]he earliest the statute of limitations can be said to run is March of 1963. The appellant confronted her surgeon with her symptoms and ailments immediately after the operation. Having absolute confidence in the judgment of her physician, as is the case in many physician-patient relationships, she believed the appellee's statement that the pain was an emotional reaction to surgery and the numbness would be temporary. So confident was she, that despite the ongoing nature of her symptoms appellant continued her treatments with the appellee until March, 1963. We believe that appellant's delay in seeking other medical advice was a reasonable one, prompted by her faith in her physician. While the concealment of the cause of her symptoms cannot be said to rise to "fraud" or "deception," we hold that the assurances of the physician lulling his patient into a false sense of security acted as "concealment," thereby tolling the statute until March, 1963. Our computation is justified further by the continued course of treatment followed by the appellant with the appellee surgeon from the date of the surgery until March, 1963. See *Plazak v. Allegheny Steel Co.*, 324 Pa. 422, 188 A. 130 (1936).

The second exception is likewise applicable to the instant case. Appellant contends that the damage to the chorda tympani nerve was not ascertainable until after discontinuing her treatments with Dr. Schlosser. It was not until Dr. Pegues determined by physical examination that there was loss of taste on the left side of appellant's tongue. It was pointed out at trial that such loss of sensation and "numbness" were not physical signs readily experienced or discovered without medical examination. During the two years following surgery, the appellant who had been under the continuous treatment of the appellee could not reasonably have been expected to ascertain the cause of her symptomology. Instead, she could only conclude, based on the appellee's assurances, that her maladies were temporary and would disappear with time.

While the appellant was symptomatic since 1961, and while physical examination would have determined the extent of injury as early as 1961, to compute the running of the statute of limitations from that date simply is

not the law. Because of appellant's reasonable reliance on appellee's representations, we conclude that the statute was tolled until March, 1963, at which time appellant was first able to ascertain the cause of her injury. *Ayers v. Morgan, supra.* In our opinion that was the crucial factor. Logic and judicial fairness compel no other result. *Barshady, supra,* 226 Pa.Super. at 262–65, 313 A.2d at 298.

In the instant case, appellant's complaint alleged that she was "at all times advised that operative procedures had corrected the problem with her eye and that it would be a matter of time before her vision was restored." Consequently, *appellant maintains that she neither knew of nor could have discovered the injury allegedly sustained during the November 17, 1972 surgery until Dr. Kurz informed her of the permanence of the damage on August 9, 1973. Moreover, appellee's answers and appellee's motion for summary judgment do not assert that Dr. Palena ever informed appellant of the nature or permanence of her injury.*

Construing the pleadings, as we must, in the light most favorable to appellant as the non-moving party, *Husak[ v. Berkel, Inc.], supra,* 234 Pa.Super. 452, 341 A.2d 174 [1975]; *Amabile[ v. Auto Kleen Car Wash], supra,* 249 Pa.Super. 240, 376 A.2d 247 [1977]; *Bowman[v. Sears, Roebuck & Co.], supra,* 245 Pa.Super. 530, 369 A.2d 754 [1976],* we conclude that Dr. Palena gave appellant no information which would have provided reason for her to believe that her visual loss was permanent or that she had sustained any injury during surgery. *Appellant, under Palena's care until July, 1973, could not reasonably have been expected to ascertain on her own, the cause of the deterioration of her eye. Instead, she could only conclude, based on Dr. Palena's alleged assurances, that her vision would return. Thus, it was not until August 9, 1973, when Dr. Kurz informed appellant that he would have to remove her eye that appellant discovered the injury.*

Because we conclude that appellant's non-discovery of the cause of her injury until August 9, 1973 was reasonable, we hold that the statute of limitations was tolled and appellant's cause of action did not begin until that date. Accordingly, appellant's complaint filed on July 30, 1975 was within the statutory period, and the lower court erroneously granted appellee's motion for summary judgment.

*Acker,* 393 A.2d at 1233–35 (footnote omitted) (emphasis added). *See also DeMartino v. Albert Einstein Medical Center, Northern Division,* 313 Pa.Super. 492, 460 A.2d 295, 300 & 301 (1983) (in the absence of fraud or concealment the statute of limitations begins to run when a tort is ascertainable; if, however, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the action." (citations omitted)).

¶ 12 Herein, as in *Acker* and *Barshady,* Appellant remained under the surgeon's care for a period of time after the operation, which encompassed office visits and repeated assurances that her condition ("pain and numbness") would subside. Dr. Rice's prognosis for Appellant's recovery (a two-month update after each visit) did not dissuade her from remaining under his care from April 5, 1995, through March 19, 1997. *See* Appellant's Complaint, Paragraph 7. If we stop our inquiry here, with Appellant's writ filed September 26, 1997, the lawsuit is not barred by the two-year statute of limitations.

¶ 13 This is predicated upon the fact Appellant relied upon Dr. Rice's continued assurances that her situation "would get better, it would go away" in a couple of months. Further, Dr. Rice diagnosed Appellant's post-operative condition as "a complication from the surgery" that would dissipate with time. Appellant "trusted" the surgeon and "relied solely on him." This type of patient-physician bond is not unusual and prompts patients to rely on the assurances of recovery. *See Petri, supra; Acker, supra; Barshady, supra; see also Held v. Neft,* 352 Pa.Super. 195, 507 A.2d 839 (1986).

¶ 14 A jury could conceivably conclude that Appellant's failure to investigate the possible causes of her condition until the first referral with Dr. Kaltman on October 11, 1995, was reasonable, especially in light of the repeated assurances of full recuperation by Dr. Rice. The circumstances at the time of Appellant's operation do not unquestionably Indicate she was unreasonable as a matter of law in taking the course of action she did. *Id.*

¶ 15 We find the assurances given by Dr. Rice lulled Appellant into a false sense of security, which conduct constituted "concealment," [2] and, thus, tolled the statute of limitations. *Contrast DeMartino, supra.* Nonetheless, when the injured person loses confidence in her doctor, the statute of limitations begins to run anew. *See Held, supra* at 842–43 (the statute of limitations, albeit stayed by "concealment" attributed to defendant/doctor, began to

run from the time Appellant lost confidence in her doctor: "the fact that [Appellant] sought professional advice concerning the pain indicates that she did not choose to rely upon her own subjective knowledge of its cause.")

¶ 16 Applying the *Held* rationale here, even with concealment present, Appellant showed that she did not choose to rely on Dr. Rice's opinion that her pain and numbness would subside when she sought alternative professional advice. Seeking such advice was reasonable, *i.e.,* she lost confidence in her own doctor's ability to treat her condition. Her office visit to Dr. Kaltman on October 11, 1995, was evidence of this loss of confidence. Appellant chose the proper course by seeking other professional advice, which this starting point renders timely the filing of the writ on September 26, 1997.[3]

¶ 17 Judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.

---

**2.** Additionally, viewing the record as we must in a light most favorable to the non-moving party, Dr. Rice failed to refer Appellant to a neurosurgeon (Dr. Sotereanos) at the optimum time (one and one-half years after the original surgery) to perform any corrective procedure. This window of opportunity was let pass by Dr. Rice, which precluded Dr. Sotereanos from performing the corrective surgery upon the inferior alveolar nerve damaged during the original operation. This act of concealment impeded Appellant's opportunity to rectify, possibly, her medical condition ("pain" and "numbness" of the face).

**3.** The filing of the writ was prior in time to the expiration of the two-year statute of limitations *via* reactivation of the run date on October 11, 1995.