J-A08016-22
J-A08017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JENNIFER M. STRAW AND THOMAS P. STRAW, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF ELIJAH C. STRAW, DECEASED; AND ROWAN J. STRAW, A MINOR, BY AND THROUGH HIS PARENTS AND NATURAL GUARDIANS, JENNIFER M. STRAW AND THOMAS P. STRAW | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | No. 639 WDA 2021 |
| v. | |
| KIRK A. FAIR AND GOLON MASONRY RESTORATION, INC. | |
| v. | |
| PITTSBURGH LUBES, INC. D/B/A JIFFY LUBE, TOWER AUTO SALES & SERVICE, NATIONAL AUTOMOTIVE PARTS ASSOCIATION-NAPA AUTO PARTS T/D/B/A NAPA | |
| v. | |
| THOMAS P. STRAW | |
| APPEAL OF: GOLON MASONRY RESTORATION, INC. | |

Appeal from the Order Entered April 29, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD No.13-003294

J-A08016-22
J-A08017-22

| | | |
|---|---|---|
| JENNIFER M. STRAW AND THOMAS P. STRAW, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF ELIJAH C. STRAW, DECEASED; AND ROWAN J. STRAW, A MINOR, BY AND THROUGH HIS PARENTS AND NATURAL GUARDIANS, JENNIFER M. STRAW AND THOMAS P. STRAW | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 645 WDA 2021 |
| | : : : | |
| v. | : : : | |
| | : : : | |
| KIRK A. FAIR AND GOLON MASONRY RESTORATION, INC. | : : : : | |
| | : : : | |
| v. | : : : | |
| | : : : | |
| PITTSBURGH LUBES, INC. D/B/A JIFFY LUBE, TOWER AUTO SALES & SERVICE, NATIONAL AUTOMOTIVE PARTS ASSOCIATION-NAPA  AUTO PARTS T/D/B/A NAPA | : : : : : : : | |
| | : : : | |
| v. | : : : | |
| | : : : | |
| THOMAS P. STRAW | : : : : | |

APPEAL OF: KIRK A. FAIR

Appeal from the Order Entered April 29, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  G.D. 13-003294

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

J-A08016-22
J-A08017-22

MEMORANDUM BY LAZARUS, J.:                FILED: AUGUST 8, 2022

Appellants, Kirk A. Fair and Golon Masonry Restoration, Inc. (collectively, Masonry Defendants), appeal from two court orders entered in the Court of Common Pleas of Allegheny County.[1] The Masonry Defendants first appeal from an order, docketed September 11, 2019, granting summary judgment to appellees Pittsburgh Lubes, Inc. d/b/a Jiffy Lube, Tower Auto Sales & Service, and Fayette Auto Parts Service, Inc.[2] (collectively, Hood Latch Defendants), that dismissed their claims for contribution against the Hood Latch Defendants. The Masonry Defendants also appeal from an order, docketed April 29, 2021, that denied their Motion to Mark Claims Discontinued with Prejudice. On July 23, 2021, the Hood Latch Defendants and Crossclaim Defendant Thomas Straw moved to quash the appeals. After careful review, we reverse the order of the trial court granting the motion for summary judgment and remand for further proceedings on the issue of contribution consistent with this decision.

_____

[1] The Masonry Defendants have complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which requires the filing of "separate appeals from an order that resolves issues arising on more than one docket." **Id.** at 977. The Masonry Defendants filed separate notices of appeal, at 639 WDA 2021 and 645 WDA 2021, on May 28, 2021. Additionally, both appeals raise the same claims, and, for purposes of our disposition, we have consolidated the appeals sua sponte. **See** Pa.R.A.P. 513.

[2] Fayette Auto Parts Service, Inc., is incorrectly identified in the case caption as "National Automotive Parts Association – NAPA Auto Parts T/D/B/A NAPA."

2

By way of background, on May 1, 2012, Thomas Straw was driving his vehicle with his wife, Jennifer, and their two sons, Elijah and Rowan, as passengers. As Mr. Straw was driving down the highway, the hood of his vehicle experienced a mechanical malfunction and popped open, obstructing his vision. Mr. Straw subsequently activated his flashers and brought his vehicle to a stop in the middle lane of the highway. At around the same time, Kirk Fair was driving behind the Straws, in a truck that his employer, Golon Masonry, provided him to use on the job. However, Mr. Fair was unable to stop his vehicle in time before crashing into the Straws' stationary vehicle. The collision caused serious injuries to Thomas, Jennifer, Rowan, and Elijah. Elijah later died from his injuries.

On February 21, 2013, the Straws filed a ten-count complaint against the Masonry Defendants. The Masonry Defendants filed crossclaims for contribution and indemnity against Thomas Straw. The Masonry Defendants also joined as additional defendants the Hood Latch Defendants, asserting that their negligent work on the hood latch of the car, and assurances that the hood latch was safe, contributed to the motor vehicle accident.

On June 19, 2015, the Straws filed a motion for summary judgment. On June 26 and 29, 2015 and August 10, 2015, Hood Latch Defendants filed motions for summary judgment. On November 10, 2015, the trial court granted summary judgment to the Straws and the Hood Latch Defendants, dismissing the Masonry Defendants' crossclaims and joinder complaints. The

Straws then proceeded to trial against only the Masonry Defendants. The jury found in favor of the Straws and damages were entered in excess of $35 million. The Masonry Defendants filed post-trial motions, which were denied, and judgment was entered against the Masonry Defendants. On May 23, 2016, the Masonry Defendants appealed from the orders granting summary judgment.

On March 14, 2018, while the appeal was pending, the Straws entered into a high-low mutual release settlement agreement (2018 Settlement Agreement) with the Masonry Defendants that was contingent upon the outcome of the appeal. The parties to the agreement also drafted an Addendum to Agreement Regarding Judgment, Appeal & Mutual Release (Addendum) that contained a "Scope of Release" provision reaffirming the intention of the parties to release all of the Straws' claims against any person or entity arising out of or in any way related to the motor vehicle collision. The Straws, however, did not file a *praecipe* to discontinue their claims against the Masonry Defendants, and the Masonry Defendants did not file a *praecipe* to discontinue their crossclaims against Thomas Straw.

On May 11, 2018, this Court concluded that the trial court improperly granted summary judgment to Thomas Straw and the Hood Latch Defendants, vacated the judgment, and remanded. ***Straw v. Fair***, 187 A.3d 966 (Pa. Super. 2018). Since this Court vacated the judgment, the Masonry

4

Defendants paid the "low" of $20 million to the Straws per the 2018 Settlement Agreement.

Upon remand, on May 31, 2019, the Hood Latch Defendants filed a Joint Motion for Summary Judgment. The Hood Latch Defendants argued that the 2018 Settlement Agreement among the Straws and the Masonry Defendants did not contain any provision that extinguished the claims between the Straws and the Hood Latch Defendants. Therefore, the Hood Latch Defendants contended that the Masonry Defendants failed to preserve their contribution claims against the Hood Latch Defendants. **See** 42 Pa.C.S. § 8324(c) ("A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement."). In response, the Masonry Defendants argued that the 2018 Settlement Agreement properly preserved their right to seek contribution. Additionally, the Masonry Defendants asserted that the Addendum confirmed the intention of the Straws and the Masonry Defendants to relinquish all claims, leaving the contribution claims against the Hood Latch Defendants as the only claims remaining in the case. The Hood Latch Defendants countered that the Addendum was invalid, for it lacked consideration and was never approved by the Orphans' Court. By an order docketed on September 11, 2019, the trial court granted the Joint Motion for Summary Judgment in favor of the Hood Latch Defendants and dismissed the Masonry Defendants' claims for contribution.

On October 3, 2019, the Masonry Defendants filed appeals at 1491 and 1492 WDA 2019, which we quashed as interlocutory.[3] *See* Order, 12/4/19, at 2. On January 29, 2020, the Masonry Defendants filed new notices of appeal, which were docketed at 155 and 157 WDA 2020. This Court issued Rules to Show Cause as to why these appeals should also not be quashed as interlocutory. Additionally, the Hood Latch Defendants and the Straws filed a Joint Application to Quash the appeals. In response, the Masonry Defendants asserted that this Court should look to the "practical ramifications" of the order granting summary judgment, in conjunction with the subsequently filed settlement documents, to conclude that the appeals were properly taken from a final order. Answer to Application to Quash (157 WDA 2021), 4/29/20, at 3 (quoting *In re Fourth Dauphin Cnty. Investigating Grand Jury*, 946 A.2d 666, 668 (Pa. 2008)). We again quashed the appeals as interlocutory. *See* Order, 5/27/20, at 1.

Thereafter, the Masonry Defendants filed a Joint Motion to Mark Claims Discontinued with Prejudice in the trial court. The Masonry Defendants argued that the Straws had settled all claims against them and waived, abandoned, or released all claims against the Hood Latch Defendants. Therefore, the Masonry Defendants sought to have the trial court enter an order confirming

---

[3] While these appeals were pending, in November 2019, the Straws and the Hood Latch Defendants entered into a mutual release to settle all claims between the two parties.

that all the claims among the parties, except their contribution claims against the Hood Latch Defendants, were discontinued with prejudice, so they could file an appeal of the summary judgment order. On April 29, 2021, the trial court denied the Joint Motion to Mark Claims Discontinued. The Masonry Defendants subsequently appealed at the above-captioned dockets.

On July 9, 2021, this Court issued a Rule to Show Cause directing the Masonry Defendants to show cause as to why their appeals should not be quashed or dismissed for failure to appeal from a final order. *See* Rule to Show Cause, 7/9/21, at 1-2. On July 23, 2021, the Hood Latch Defendants and Straws filed, in this Court, a joint motion to quash, again asserting that the summary judgment order was not final.

In response, the Masonry Defendants contended that "[t]he trial court's refusal to mandate th[e] ministerial act of marking any remaining claims discontinued has so far completely prevented . . . [them] from appealing" the order granting summary judgment in favor of the Hood Latch Defendants. Answer to Application to Quash Appeal (639 WDA 2021), 8/6/21, at 1. The Masonry Defendants reiterated that "there are no claims in this case other than [their] claims against the [Hood Latch Defendants]" for contribution because every claim has either been adjudicated, abandoned, waived, or settled. *Id.* at 7-8 (citing *Straw*, 187 A.3d at 981 n.11). In particular, the Masonry Defendants contend that because every claim has either been adjudicated, abandoned, waived, or settled, we should look to the "practical

7

effect" of the trial court proceedings rather than the technical effects. ***Id.*** at 2-3 (citing ***Lustig v. Lustig***, 652 A.2d 393, 394 (Pa. Super. 1995)).

On November 1, 2021, this Court denied the Joint Motion to Quash Appeal without prejudice to the moving parties' right to again raise the issue, if properly preserved. Additionally, on the same day, this Court discharged its Rule to Show Cause and referred the matter to the merits panel.

The Masonry Defendants raise the following issues on appeal:

1. Whether the trial court erred or abused its discretion in refusing to direct the prothonotary to mark the docket to reflect a discontinuance of all claims not subject to the summary judgment order also appealed herein, because those other claims had all been previously abandoned, waived, settled, and released.

2. Whether the entry of summary judgment was appropriate where the trial court viewed the evidence in the light most favorable to the moving party and resolved all issues of doubt in favor of the moving party. The question turns on the court's interpretation of a release, where the non-movant at summary judgment (in whose favor the release must be read) was a party to that release, and the summary judgment movant (against whom all ambiguity in the release must be construed) was not a party to that release, but a nonparty to it urging an indefensible construction of the release.

Brief for Appellant, at 9 (claims reordered for ease of disposition).

Preliminarily, we must determine whether the Masonry Defendants have appealed from a final order, or whether their appeals are interlocutory. ***See*** Pa.R.A.P. 341(b)(1), (c); ***see also Gutteridge v. A.P. Green Servs., Inc.***, 804 A.2d 643, 650 (Pa. Super. 2002) (finality of order appealed from is jurisdictional and must be addressed prior to merits review).

8

Generally, a final order is an order that disposes of all the claims and parties. Pa.R.A.P. 341(b)(1). The "entry of an order to settle, discontinue, and end a proceeding has 'the same effect as the entry of a judgment' in any legal proceeding." *Barson's & Overbrook, Inc. v. Acre Sales Corp.*, 324 A.2d 467, 468 (Pa. Super. 1974) (citation omitted). This Court has, however, overlooked the failure to formally docket a discontinuance in the interest of judicial economy, and has "regard[ed] as done that which ought to have been done." *Croydon Plastics Co., Inc v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 628 (Pa. Super. 1997) (citation omitted). "We recognize that the proper approach in deciding whether an order is a final and[,] hence[,] an appealable one is to apply practical considerations after examining the ramifications of the order." *Adoption of M.*, 398 A.2d 642, 644 (Pa. 1979) (citation omitted). We "must look beyond the technical effects of the [trial court] adjudication to its **practical ramifications**." *Lustig*, 652 A.2d at 394 (emphasis added).

Instantly, although the underlying trial claims have not been formally discontinued, the Straws have no remaining claims against the Hood Latch Defendants that would preclude a finding of finality for purposes of appeal. The Straws and Hood Latch Defendants made judicial admissions at the summary judgment stage that may not now be contradicted. *See Nasim v. Shamrock Welding Supply Co.*, 563 A.2d 1266, 1270 (Pa. Super. 1989) ("[T]he key element of a judicial admission is that a fact which has been

9

admitted for the advantage of the admitting party cannot subsequently be refuted by that party."). A judicial admission may arise from "[s]tatements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit." *Cogley v. Duncan*, 32 A.3d 1288, 1292 (Pa. Super. 2011). These admissions "are considered conclusive in the cause of action in which they are made . . . and the opposing party need not offer further evidence to prove the fact admitted." *Id.*

The Straws and Hood Latch Defendants have repeatedly acknowledged in their briefs and oral arguments that the Straws have no outstanding claims against the Hood Latch Defendants.[4] During the August 31, 2015 summary judgment hearing, the Straws specifically stated that the Hood Latch Defendants "should never have been sued to begin with and should be out of this case[.]" N.T. Summary Judgment Hearing, 8/31/15, at 59.

Tower Auto, one of the Hood Latch Defendants, explained in its summary judgment brief that "[n]o other party opposes [our] motion." Tower Reply Brief in Support of Summary Judgment, 9/8/15, at 2 n. 2. Further, at the 2015 summary judgment hearing, Tower explained, "We're friends with the Straws. They didn't sue us . . . [or] any of the additional defendants." N.T. Summary Judgment Hearing, 8/31/15, at 44-46. Tower has explained

---

[4] The Straws desired to end all litigation, and their "number one priority was negotiating a resolution that would end their family's involvement in the legal proceedings." Appellee's Amended Brief, 1/7/22, at 20 n.17.

that the Masonry Defendants are the only people who have claims against the Hood Latch Defendants, and the Straws "do not, and have never" had any claims against the Hood Latch Defendants. Post-Trial Brief, 1/14/16, at 5 n.7. Lastly, in a prior appeal before this Court, Tower argued in its brief that "[t]here is absolutely no evidence that Tower Auto breached a duty owed to the [Straws] (and the [Straws] do not contend otherwise)." Tower Superior Court Brief (742 WDA 2016), at 12.

Hood Latch Defendant, Jiffy Lube, provided similar arguments at the summary judgment phase that the only claim against it was that of contribution. N.T. Summary Judgment Hearing, 8/31/15, at 25 ("we have **only** been joined as an additional defendant for contribution and indemnification") (emphasis added).

All these statements from the Straws and Hood Latch Defendants demonstrate a mutual understanding that the Straws had no claims against the Hood Latch Defendants. Indeed, as we noted in our prior decision, "[t]here are no outstanding claims remaining in this case." *Straw*, 187 A.3d at n.11. These judicial admissions by the parties are conclusive admissions that were made for the advantage of the parties at summary judgment. *See Cogley*, *supra*. They cannot now be revoked to opportunistically delay the judicial process further and prevent appeal. There is a need to "'protect the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system' by switching positions as required by the moment." *In*

11

*re Estate of Bullota*, 838 A.2d 594, 596 (Pa. 2003) (citation omitted).

Accordingly, we conclude that the Masonry Defendants have properly appealed from what is, effectively, a final order, as no claims remain among any of the parties.[5]  **See** Pa.R.A.P. 341(b)(1), (c); **see also Lustig**, **supra**.[6]

---

[5] We agree with the Masonry Defendants that the trial court erred in refusing to mark the claims discontinued.  **See Lustig**, **supra**.  There are no further proceedings to take place in the trial court besides those related to contribution, which were denied at summary judgment.  Accordingly, the Masonry Defendants have properly appealed from a final order in the trial court, and we have jurisdiction to hear the appeal.  **See** Pa.R.A.P. 341(b)(1).

[6] We note that the Straws contend they raised direct claims against the Hood Latch defendants by virtue of the joinder complaints filed by the Masonry Defendants.  Amended Brief for Straws, at 21-23.  While we are cognizant that under Pa.R.C.P. 2255(d), a plaintiff "shall recover" from additional liable defendants, we are constrained to conclude that the Straws nevertheless waived any direct claims against the Hood Latch Defendants by not opposing the Hood Latch Defendants' summary judgment motions.  **See Payton v. Pennsylvania Sling Co.**, 710 A.2d 1221 (Pa. Super. 1998) (failure to raise claim in opposition to summary judgment waives claim); Pa.R.C.P. 1035.3(a) (plaintiffs "may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion.").  Any direct claims the Straws may have had against the Hood Latch Defendants are waived due to their failure to oppose summary judgment.  **See Grandelli v. Methodist Hosp.**, 777 A.2d 1138 (Pa. Super. 2001) (arguments not raised before trial court in opposition to summary judgment cannot be raised for the first time on appeal.)

Moreover, we observe that in November 2019, the Straws and Hood Latch Defendants entered into a settlement agreement to release the alleged claims the two parties had against each other.  That agreement provides that if this Court were to affirm the order of summary judgment, then the settlement requires the Hood Latch Defendants to pay the Straws $100,000.00.  In the alternative, that agreement provides that if this Court were to reverse, the settlement simply releases both parties of any claims without payment.  In light of our discussion above, it is unclear what substantive claims this settlement is releasing; nevertheless, it is apparent that the "practical ramifications" of the summary judgment order and subsequent settlement

In their second claim, the Masonry Defendants put forth three separate arguments for why they preserved claims for contribution against the Hood Latch Defendants. First, they contend that the 2018 Settlement Agreement preserved their claims for contribution by releasing the Straws of **all** their claims. Second, they assert the Addendum to the 2018 Settlement Agreement confirms that the contribution claims are preserved. Third, they argue that regardless of whether the 2018 Settlement Agreement and Addendum technically preserved the contribution claims, the Straws have no remaining claims against the Masonry Defendants, so the 2018 Settlement Agreement essentially preserved the contribution claims. We address these arguments in turn.

We have previously stated our standard of review in this case as follows:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

---

agreement are that no claims remain in the trial court. **See Lustig**, 652 A.2d at 394.

*Straw v. Fair*, 187 A.3d 966, 982 (Pa. Super. 2018) (citations omitted); *see also Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) ("[T]he issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.").

First, the Masonry Defendants argue that the 2018 Settlement Agreement indicates that the Straws wanted to terminate all litigation and avoid all future proceedings by marking the judgment satisfied. The Masonry Defendants direct our attention to the following paragraphs in the release to argue that it also releases claims against the Hood Latch Defendants:

> "Straws desire to terminate all litigation and avoid further proceedings including retrials and appeals." Factual Premises, ¶ 14.

> "[The Masonry Defendants] . . . desire to satisfy the judgment for less than awarded, to mark the judgment satisfied." *Id.* at ¶ 15.

Brief for Appellant, 11/18/21, at 23. The Masonry Defendants also argue that the 2018 Settlement Agreement refers to their right to contribution in multiple places:

> "It is understood and agreed that [the Masonry Defendants] . . . retain all rights to seek indemnification and contribution from the [Hood Latch Defendants] and that nothing in this Agreement shall release, discharge, or otherwise disturb those rights and claims." Covenants and Release, ¶ 1(f).

> "Thomas Straw and Jennifer Straw agree to voluntarily participate, within reason, in any additional proceedings advanced by [the Masonry

Defendants], including but not limited to trial against the [Hood Latch Defendants]." ***Id.*** at ¶ 1(h).

Brief for Appellant, 11/18/21, at 23-24.

When interpreting the effect and scope of a settlement agreement, the "primary focus is on the intent of the parties to the agreement and ordinary effect should be given to that intent." ***Maloney v. Valley Med. Facilities, Inc.***, 984 A.2d 478, 487 (Pa. 2009) (quoting Restatement (Third) of Torts, Apportionment of Liability § 24 cmt. f). We give deference to the intent of the parties because "parties to a settlement should be afforded latitude to effectuate their express intentions." ***Id.*** However, "the primary source of the court's understanding of the parties' intent must be the document itself." ***Flatley by Flatley v. Penman***, 632 A.2d 1342, 1344 (Pa. Super. 1993) (citation omitted). Therefore, "what a party now claims to have intended is not as important as the intent that we glean from a reading of the document itself." ***Id.*** Additionally, the Contribution Among Tort-Feasors Act explains that a "joint tort-feasor who enters a settlement with the injured person is not entitled to recover contribution from another joint-tortfeasor whose liability to the injured person is not extinguished by the settlement." ***See*** 42 Pa.C.S. § 8324(c).

Although the above excerpts, when read in isolation, may offer support for the position that the Straws intended to dispose of all claims in the case, "what a party now claims to have intended is not as important as the intent

15

that we glean from a reading of the document itself." ***See Flatley, supra***. The 2018 Settlement Agreement states that the "[Masonry Defendants] . . . desire to . . . discontinue litigation with Straws." 2018 Settlement Agreement, 3/14/18, at 4 ¶ 15. It also explains that "the parties . . . forever release and discharge the other parties to this Agreement . . . from any and all liability, claims, causes of action . . . arising out of or in connection with the motor vehicle accident of May 1, 2012." ***Id.*** at 10 ¶ 8. Moreover, the parties agreed that the 2018 Settlement Agreement "is intended to, and does, forever terminate all legal proceedings in state court between and among the parties." ***Id.*** The Hood Latch Defendants were never included as a party to the release, and the 2018 Settlement Agreement was not made available for them to review for over a year after it was signed. Facially, the 2018 Settlement Agreement does not discharge the liability of any of the Hood Latch Defendants – it merely settles the claims **of the parties to the release**.

Furthermore, asserting that a right to contribution exists is not sufficient to preserve or establish a claim for contribution. ***Walton v. Avco Corporation***, 610 A.2d 454, 461 (Pa. 1992). The Masonry Defendants "cannot now claim that it intended to reserve a right to contribution that it did not have in the first place." Trial Court Opinion, 9/9/21, at 4 (citing ***Walton***, 610 A.2d at 461).

In ***Walton***, our Supreme Court explained that "[c]rucial to consideration of this issue [of contribution] is the requirement that the liability of the non-

settling joint tortfeasor be *extinguished* before a right to contribution arises."
**Walton**, 610 A.2d at 461 (emphasis in original). There, one defendant settled with the plaintiff before trial and then sought contribution against the non-settling third-party defendant. **Id.** at 456. The Supreme Court held that the defendant did not preserve a right to contribution because the release entered by the plaintiff and defendant "makes no mention of [the additional defendant] being similarly released." **Id.** at 461.

Instantly, the 2018 Settlement Agreement makes no mention of the Straws releasing the Hood Latch Defendants, and, therefore, the Masonry Defendants did not technically preserve their contribution claims through that instrument. Therefore, we conclude that the trial court did not err or abuse its discretion in concluding that the 2018 Settlement Agreement, on its own, failed to properly preserve the contribution claim against the Hood Latch Defendants. **See Straw**, **supra**. As noted above, the 2018 Settlement Agreement did not properly release the Hood Latch Defendants, as they were not a party to the Agreement and, therefore, the contribution claim did not arise. **See Walton**, **supra**. Accordingly, this argument lacks merit and we grant no relief on this claim.

Next, we address the Addendum to the 2018 Settlement Agreement. The Straws and their counsel, along with the Masonry Defendants, executed the Addendum on May 7, 2018, which was incorporated into the 2018

Settlement Agreement.[7]   The Addendum was partly executed to clarify any

ambiguity in the 2018 Settlement Agreement regarding whether the claims

for contribution were preserved.[8]   The Masonry Defendants contend that even

if the 2018 Settlement Agreement did not preserve their contribution claims,

the Addendum preserved those claims because it released **all** of the Straws'

claims against all parties related to the motor vehicle accident.   **See** Brief for

Appellant, 11/18/21 at 29-32.

> The Addendum states:

> In further consideration of the payments specified above, Straws, [Masonry Defendants], and Selective reaffirm their original intention and understanding that the [2018 Settlement Agreement] discharges and releases all of the Straws' claims against any person or entity arising out of or in any way related to the motor vehicle collision on May 1, 2012. This intention and understanding is recited in the [2018 Settlement Agreement]. . . . As a result of the [2018 Settlement Agreement,] the Straws have no remaining claims or potential claims against [the Masonry Defendants], Selective or any other party, person, or entity.

---

[7] The 2018 Settlement Agreement contains an integration clause precluding oral modification of its terms.   **See** Covenants and Release, ¶ 3 ("This Agreement constitutes the entire agreement of the parties with respect to its subject matter and cannot be altered by alleged oral understandings[.]").

[8] A May 2, 2018 email from the Straws' counsel to counsel for the Masonry Defendants illustrates that the parties understood that there could be problems with the 2018 Settlement Agreement preserving claims for contribution.  Email from Straws to Masonry Defendants, 5/2/18 ("I have had some interesting discussions with the additional defendants and they believe if our agreement isn't written a certain way (and it is not based on my understanding from them) that you may have issues continuing to pursue them.").

> As further recited in the [2018 Settlement Agreement], [Masonry Defendants] and Selective retain the right to seek indemnity and contribution from the [Hood Latch Defendants]. . . . Thomas Straw and Jennifer Straw agree to voluntarily participate, within reason, in any additional proceedings advanced by . . . [the Masonry Defendants], including but not limited to trial against the [Hood Latch Defendants].

Addendum, 5/7/18, at ¶ 6(a)–(b).

The above language, standing alone, would preserve claims for contribution. **See** 42 Pa.C.S. § 8326 ("A release by the injured person of one joint tort-feasor . . . does not discharge the other tort-feasors **unless the release so provides**.") (emphasis added); **cf. Walton**, **supra**. The Addendum clearly discharges **all** tort-feasors from any potential claims by the Straws. **See** Addendum, 5/7/18, at ¶ 6(a)–(b). It also clarifies that the Masonry Defendants could pursue their contribution claims, and the Straws would voluntarily participate in those proceedings. **See id.**

However, our review of the record reveals that the trial court simply ignored the Addendum when it granted summary judgment in favor of the Hood Latch Defendants. **See** Order, 9/11/19, at 1. Additionally, in its Pa.R.A.P. 1925(a) opinion explaining its reasoning for granting summary judgment, the trial court merely wrote, "Appellants refer to subsequent actions taken by Plaintiffs, which discharge any and all remaining claims that Plaintiffs had. . . . [I]t is the Defendants' responsibility to preserve its provision for the disposition of all parties claims against Additional Defendants by way of a general release." Trial Court Opinion, 9/9/21, at 4. Moreover, we observe

19

that the trial court's Rule 1925(a) opinion focuses almost exclusively on the 2018 Settlement Agreement and makes no mention of the Addendum executed by the Straws and the Masonry Defendants. *See id.* at 1-6. Further, although the trial court was briefed on the Addendum multiple times, it failed to include any discussion of, or reference to, the Addendum in any of its rulings. Nor did the trial court ever provide a reason for not discussing the Addendum.

Thus, we are constrained to conclude that the trial court abused its discretion by not properly addressing the validity and effect of the Addendum.[9] We note that the proper approach to summary judgment requires "that all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party." *Ward v. Rice*, 828 A.2d 1118, 1120 (Pa. Super. 2003) (citation omitted). Since the Addendum appears to preserve claims for contribution, the trial court erred in granting summary judgment without considering its validity and effect.

---

[9] The Straws and Hood Latch Defendants argue that the Addendum is not binding on the parties for lack of consideration and court approval. *See* Brief for Appellee, 12/17/21, at 17-21. However, these issues are not before us today and are more properly decided on remand. *See Commonwealth v. Grant*, 813 A.2d 726, 733 (Pa. 2002) (noting that appellate courts generally do not consider matters that involve a consideration of facts not in evidence, because "the absence of a trial court opinion can pose a substantial impediment to meaningful and effective appellate review.").

20

Accordingly, we conclude that the trial court abused its discretion in granting summary judgment. **See Straw**, **supra**. Thus, we reverse and remand. On remand, we direct the trial court to conduct any proceedings that it deems necessary. **See** 42 Pa.C.S. §§ 8324, 8326; **see also** Pa.R.C.P 2039.[10]

Judgment reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2022

---

[10] We note that the Masonry Defendants offer a final argument that the 2018 Settlement Agreement **effectively** disposes of all the Straws claims because the Straws only had claims against the Masonry Defendants from the start. They argue that **Walton**, thus, does not apply because there were no claims by the Straws against the Hood Latch defendants for the 2018 Settlement Agreement to even release. **See Walton supra**. However, in light of our disposition, we need not address this final claim.